20258

Cecil E. GILBERT and James F. Gilbert, Jr., Respondents, v. MID-SOUTH MACHINERY COMPANY, INC., and Thomas H. Coker, Individually and doing business as Mid-South Machinery Company, Inc., Appellants.

(227 S. E. (2d) 189)

*Messrs. Watkins, Vandiver, Kirven, Long & Gable,* of Anderson, and *Horton, Drawdy, Marchbanks, Ashmore, Chapman and Brown,* of Greenville, *for Appellants,*

*Messrs. Robert L. Waldrep, Jr.,* and *G. Ross Anderson, Jr.,* of Anderson, *for Respondents,*

July 14, 1976.

RHODES, Justice:

This is a fraud and deceit action involving the sale and purchase of an automatic laundry and dry cleaning business. The purchasers were plaintiffs-respondents Cecil E. Gilbert and James F. Gilbert, Jr., and the seller was defendant-appellant Mid-South Machinery Company, Inc. Defendant-appellant Thomas H. Coker is the president of Mid-South and was joined in the suit in his individual capacity. A jury awarded the Gilberts $45,000.00 actual and $5,000.00 punitive damages against both Mid-South and Coker. The lower court denied motions of the defendants for a directed verdict, judgment *n. o. v.*, and a new trial. We affirm.

Mid-South is the authorized distributor of Norge coin-operated laundry and dry cleaning equipment and Norge laundromat franchises in South Carolina and portions of North Carolina. In 1970 a corporation, Anderson Norgetown, Inc., commenced operation of the Norge Laundry and Dry Cleaning Village Store at the Camp Shopping Center in the City of Anderson. Anderson Norgetown installed new Norge equipment in the laundromat which was purchased

from Mid-South and leased to Anderson Norgetown by the Falco Corporation. The terms of the lease required Anderson Norgetown to pay monthly payments of $1,251.83 during the next four years. The cost of the new equipment was listed as $44,708.26.

In 1971, one of the five stockholders of Anderson Norgetown, Richard Leggett, became sole owner of the Anderson laundromat. Eight months later, Leggett decided to sell the business. and gave a purchase option to Mid-South and it, subsequently, advertised the business for sale in an Anderson newspaper.

In December of 1971, James Gilbert contacted Coker in response to the newspaper advertisement. After talking to Coker and inspecting the premises, James Gilbert took Coker to meet his mother, Cecil Gilbert, and they discussed the purchase of the Anderson laundromat. The Gilberts were inexperienced in the laundromat business and Coker represented himself as an expert. At this meeting Coker told Mrs. Gilbert that the business was profitable, taking in from $2,800 to $3,000 per month, and that their net would be $1,000 per month.

During the next few days the Gilberts visited the location of the business several times and on several occasions asked Coker whether there were any business records they could examine. They also asked the woman who was managing the business for Leggett about business records. Coker told them that no records existed and the woman manager told them she only kept partial records.

On December 13, 1971, Mid-South exercised its option and purchased the Anderson laundromat from Leggett. The terms of the sale were a nominal consideration and Mid-South's assumption of the Falco lease. Two days later the Gilberts purchased the laundromat from Mid-South and, in addition to assuming the Falco lease, they paid Mid-South $7,000 at the time of the sale and agreed to pay an additional $5,000 in equal annual payments over the next

.five years with interest. The balance due on the lease was $32,051.24.

During the first four months after the Gilberts purchased the Anderson laundromat they paid the monthly lease payments to Falco although sustaining monthly losses in the operation of the business. As a result of their failure to make any further lease payments, a judgment was rendered against them for the balance due on the lease. The total amount of the judgment was $31,960.13.

The present action was instituted in July of 1973 and is based upon certain alleged false and fraudulent representations made by the defendants which allegedly induced the Gilberts to purchase the Anderson laundromat. At the time of the trial in October of 1974, the Gilberts still owned the business but had made informal arrangements with another person to operate it for his own account without any compensation to them. Their complaint sought actual and punitive damages for alleged fraud and deceit.

At the close of testimony both defendants moved, unsuccessfully, for a directed verdict on the ground the evidence was insufficient to support a fraud and deceit action. In reviewing the propriety of the denial .of their motion, we, of course, view the evidence in the light most favorable to the Gilberts.

The former secretary-treasurer of Anderson Norgetown testified that the Anderson laundromat never made a profit during the eleven months Anderson Norgetown owned and operated the business. Leggett testified that he never made a profit while he operated the business. Both witnesses testified that complete business records were kept and were available at the time the Gilberts purchased the laundromat, and that neither Coker nor the Gilberts had inquired about the existence of such records. Leggett testified he told Coker about his failure to make a profit in the operation of the business.

We think the evidence that Coker told the Gilberts the Anderson laundromat was a profitable business, together with the contrary testimony of the secretary-treasurer and Leggett, made a jury question. It was a material misrepresentation of positive fact, and, if it was made for the purpose of inducing the Gilberts to purchase the laundromat and was knowingly or recklessly false, and if the Gilberts relied upon it and were misled to their injury, a verdict in their favor was warranted. *Halsey v. Minnesota-South Carolina Land & Timber Co.,* 174 S. C. 97, 177 S. E. 29 (1934). Moreover, we think there was sufficient evidence to support the jury verdict based upon the evidence that Coker told the Gilberts that there were no business records.

The representation concerning the profitability of the business related to something intangible and was not similar to the representation in *Jones v. Cooper,* 234 S. C. 477, 109 S. E. (2d) 5 (1959), the subject of which, the location of hot dog cooking machines, was open, patent, and visible. The Gilberts were not, therefore, precluded as a matter of law from relying on this representation. See *Aaron v. Hampton Motors, Inc.,* 240 S. C. 26, 124 S. E. (2d) 585 (1962).

While there was no evidence that the defendants did anything to prevent the Gilberts from asking the past owners about business records, we think it was still a jury question whether they exercised reasonable prudence for their own protection under the circumstances. *Thomas v. American Workmen,* 197 S. C. 178, 14 S. E. (2d) 886 (1941).

Generally, an action for fraud and deceit must be predicated on misstatements of fact rather than misstatements of opinion. 37 Am. Jur. (2d), Fraud and Deceit, § 45 (1968). "The distinction between fact and opinion is broadly indicated by the generalization that what was susceptible of exact knowledge when the statement was

made is usually considered to be a matter of fact." *Id.* § 46. We think that Coker's statement that the business was profitable constituted under the circumstances a misstatement of fact. Annot., 27 A. L. R. (2d) 14, § 2 (1953).

Although there was no direct proof that Coker knew about the existence of business records, we think the evidence raises the presumption of knowledge. As stated in *Aaron v. Hampton Motors, Inc., supra*:

"[I]t is not necessary, in order to establish fraud to prove that the person making the allegedly false representation had actual knowledge of its falsity; if he makes it as of his personal knowledge, with reckless disregard of his lack of information as to its truth, his knowledge of its falsity is legally inferable."

The Gilberts also charged the defendants with making false and fraudulent representations as to other aspects of the business and also the condition of the equipment in the laundromat. Since we have concluded that the representations concerning the profitability of the business and lack of business records constituted actionable fraud, it is not necessary to discuss these other representations.

In addition, Coker moved for a directed verdict on the ground there was no evidence he acted in his individual capacity. The lower court denied the motion. "An agent's liability for his own tortious acts is unaffected by the fact that he acted in his representative capacity." *Lawlor v. Scheper*, 232 S. C. 94, 101 S. E. (2d) 269 (1957). Coker personally negotiated and arranged the sale of the Anderson laundromat to the Gilberts, and his individual liability was for the jury to determine.

The Gilberts asserted in their complaint and during the trial that Coker fraudulently misrepresented to them that Mid-South had legal title to the automatic cleaning equipment. In *Falco Corp. v. Anderson Norgetown, Inc*, 263 S. C. 120; 208 S. E. (2d) 40 (1974), this Court

stated that "[t]he Gilberts knew that legal title to the equipment was in Falco when they purchased the business from Mid-South . . ." Defendants contend this finding precluded the Gilberts from re-litigating the issue of whether they knew who held title to the equipment in the present action under the doctrine of estoppel by judgment. We disagree.

As evident from the facts in *Falco Corp.* neither Mid-South nor Coker was a party in that action, and neither represented the same legal right of any of the parties in that case. Therefore, under the standards set forth in *Mackey v. Frazier,* 234 S. C. 81, 106 S. E. (2d) 895 (1959), the doctrine of estoppel by judgment has no application in the present case.

Defendants contend they are entitled to a new trial because of alleged errors in the admission of certain evidence. We have examined the exceptions relative to these alleged errors and conclude a new trial is not warranted.

Defendants next contend they are entitled to a new trial because of alleged errors in several portions of the jury charge. They first assert that the charge failed to properly instruct the jury on the weight and quality of evidence required for a plaintiff to be able to recover in a fraud and deceit action. Defendants argue that the use of the phrase "preponderance of the evidnce" in the charge relative to the weight of the evidnce is inconsistent with the further charge that the evidence must be clear, cogent, and convincing. While this precise issue has never been discussed by this Court, we think the following statement reflects the applicable law:

"Fraud must be established by a preponderance of the evidence . . . However, the courts have frequently stated that fraud must be established by evidence that is . . . clear, cogent, and convincing . . . These expressions, however, have been interpreted to mean only that there must be a preponderance of evidence sufficient to overcome the presumption of innocence of moral turpitude or crime, and,

while the evidence must be clear and convincing, such clear and convincing proof may ·be met by a preponderance of the evidence." 37 C. J. S. Fraud § 114a (1943) (see collection of S. C. cases under footnote 47).

The whole charge adequately embodied these principles and, therefore, properly instructed the jury relative to the weight and quality of evidence.

The trial judge charged the jury that concealment of material facts or latent defects in property sold which, under the circumstances, one is ·bound to disclose may constitute actionable fraud. This general rule was recognized and applied in *Lawson v. Citizens & Southern Nat. Bank of S. C.,* 259 S. C. 477, 193 S. E. (2d) 124 (1972). The Gilberts alleged and proved that much of the equipment in the Anderson laundromat was obsolete and ·in need of repair at the time they purchased the business and that defendants represented to them that the equipment was in good condition. We find ·the evidence warranted such a charge.

We have examined the remaining alleged errors relative to the jury charge and, after viewing them in the light of the whole charge, conclude that a new trial is not warranted. *Smith v. Winningham,* 252 S. C. 462, 166 S. E. (2d) 825 (1969).

The remaining grounds asserted as a basis for a new trial deal with the issue of damages. Generally, the injured party in a fraud and deceit action is entitled to recover such damages as will compensate him for ·his pecuniary loss and place him in the same position he occupied before being defrauded. *Thomas v. American Workmen, supra.* However, only damages which are ·the natural and proximate consequence of the fraudulent misrepresentations ·of the defendant and can be clearly defined and ascertained are recoverable. *Id.*

Defendants contend the judgment obtained against the Gilberts for failure to make the lease payments to Falco was not a proper element of damages. In the present case the trial judge charged the jury that actual damages would include any money or pecuniary loss suffered by the plaintiffs which was the proximate result of the alleged wrongful conduct of the defendants. Defendants did not request a more specific charge as to the measure of damages. The judgment obtained against the Gilberts was a direct result of the fraudulent transaction between them and the defendants and was, accordingly, a proper element of damage.

The last issue raised is whether the jury award was excessive. The testimony of Cecil Gilbert as to the amount of losses sustained during the time she operated the business; the amount of the judgment obtained against the Gilberts; and the amount of money paid to Mid-South at the time of sale of the business amply sustain the jury award.

We have examined all exceptions in the record and any exceptions not specifically treated herein are deemed without merit and are overruled.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.