0579

CAROLINA ATTRACTIONS, INC., Appellant, v. Sam COURTNEY, John X. Aragona, and The South Carolina National Bank, Defendants, of whom The South Carolina National Bank is Respondent.

(337 S. E. (2d) 244)

Court of Appeals

*John R. Clarke,* North Myrtle Beach, *for appellant.*

*Stan McGuffin* of *South Carolina Nat. Corp.,* Columbia, *for respondent.*

Heard Sept. 23, 1985.

Decided Nov. 20, 1985.

CURETON, Judge:

Appellant Carolina Attractions, Inc. (Carolina) brought suit against both parties to a promissory note: John X. Aragona, the maker and Sam Courtney, the payee. Carolina claims that Courtney breached his contract with Carolina both by forming a corporation named Beach Music Awards Association, Inc. (BMAA) and by selling its stock to Aragona for which Courtney received the note in dispute. Respondent South Carolina National Bank (SCN) was joined as a defendant because it took the note as collateral for two loans to Courtney. On SCN's motion for summary judgment, the trial court found SCN entitled to the note proceeds. The contract action remains unresolved. Carolina appeals. We affirm.

Carolina argues that there exists a genuine issue of material fact concerning whether SCN's interest in the note proceeds is superior to its interest and thus, the court erred in granting summary judgment. Additionally, Carolina insists that even if the trial judge should have granted SCN's motion for summary judgment, he should not have dissolved the order of another circuit judge that required the note proceeds to be held in escrow. Carolina argues that the effect of the dissolution order was to

grant relief not prayed for by proper pleadings.[1] We reject these arguments.

Courtney, a former employee of Carolina, was charged with the responsibility of formulating and promoting the Beach Music Awards Program in Myrtle Beach, South Carolina. Carolina claims Courtney was contractually bound to pay it a percentage of the net profits from the Beach Music Awards Program. Carolina alleges that Courtney breached this contract by forming his own corporation, BMAA, and selling Carolina's ideas and work product in the form of BMAA stock to Aragona and others for $45,000.00. As part payment for the stock, Aragona gave Courtney a promissory note dated November 4, 1982, for $24,400.00.

Pursuant to a Rule To Show Cause, an order was issued dated March 25, 1983, permitting the joinder of SCN as a defendant and directing Aragona to pay all monies due Courtney under the note into a trust account to be held by the Clerk of Court "until a final hearing has been held, and an Order has been issued as to the disbursement of said monies." Carolina made SCN a defendant because it made loans to Courtney on January 10, 1983 and on January 31, 1983, accepting the note as collateral.

Carolina's second amended complaint alleges that Courtney assigned the note to SCN "in order to avoid [Carolina's] claim, and to defraud [Carolina] from monies owed it by [Courtney]" and that any rights of SCN to the note proceeds "would be inferior and subordinate to the claim of [Carolina]." It then prayed that its interest in the note be declared superior to that of the bank.

SCN answered the second amended complaint admitting that the note matured on July 1, 1983, but denying its interest in the note was inferior to Carolina's. SCN also moved for summary judgment on the basis that there was no genuine issue of a material fact regarding the priority of

---

[1] While mentioned at oral argument, Carolina's exceptions and brief do not claim that the action of the trial judge overruled another circuit judge's order. Failure to raise an issue by exception constitutes a waiver and a provision in an order neither excepted to nor briefed is not properly before the Court on appeal. *Amick v. Hagler,* _____ S. C. _____, 334 S. E. (2d) 525 (Ct. App. 1985).

its claim to the note proceeds and further requested the March 1983 order be partially dissolved as it related to disbursement of the note proceeds. In support of its motion, SCN attached an affidavit of a loan officer stating that the bank had no knowledge of the pending suit against Courtney until after the loans were made. Carolina filed Courtney's affidavit indicating he advised SCN of Carolina's suit against him prior to SCN's making the loans.

By its order of September 30, 1983, the trial court granted SCN's motion for summary judgment finding that the original note was delivered to SCN on January 10, 1983; that the note remained in SCN's possession since that time; and that SCN had no notice of Carolina's suit against Courtney until after the loans were made. Having made these findings, the court concluded that the bank had a perfected security interest in the note and SCN's claim to the note proceeds were superior to Carolina's and ordered the Clerk to pay over the monies to SCN.[2]

Rule 44(c) of the Rules of Practice of the Circuit Court provides that the court shall grant summary judgment if the pleadings, depositions and affidavits, if any, show that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." On appeal from an order granting a motion for summary judgment, this Court will review the evidence and all reasonable inferences therefrom in the light most favorable to the appellant. *Threlkeld v. Christoph*, 280 S. C. 225, 226, 312 S. E. (2d) 14, 15 (Ct. App. 1984).

The trial court's order is premised on its finding that ■ SCN had a perfected security interest in the note proceeds which would take priority over an inferior claim. Carolina does not contend that SCN did not perfect its security interest. Rather, Carolina argues that since the affidavits of the loan officer and Courtney state conflicting facts concerning whether SCN had notice of the litigation pending between Carolina and Courtney when it loaned funds to him, summary judgment was inappropriate. We agree that the affidavits reflect conflicting facts relative to SCN's knowledge at the time the loans were made. The issue,

---

[2] No other party to this lawsuit claims an interest in the note proceeds.

therefore, is whether notice to SCN of the lawsuit affects the priority of SCN's lien vis-a-vis the claim of Carolina to the note proceeds. We hold it does not.

At oral argument, Carolina conceded that it had no legal lien or claim against the note proceeds, but argued that it had an *equitable* claim against the note proceeds. The pleadings fall far short, however, of alleging a cause of action for the establishment of an equitable lien or charge against the note proceeds. *See Georgia-Carolina Gravel Co. v. Blassingame*, 129 S. C. 18, 123 S. E. 324, 326 (1924) (equitable lien held not to exist where complaint did not set forth sufficient facts showing an express agreement).

An equitable lien or charge is neither an estate or property in the thing itself, nor a right to recover the thing, but is simply a right of a special nature over the thing, which constitutes a charge upon the thing so that the very thing itself may be proceeded against in equity for payment of a claim. *Collier v. Bank of Tupelo*, 190 Ga. 598, 10 S. E. (2d) 62, 65 (1940). *See* 51 Am. Jur. (2d) *Liens* Section 22 (1970); *Routon v. Woodbury Banking Co.*, 209 Ga. 706, 75 S. E. (2d) 561, 562 (1953). For an equitable lien to arise as to specific property, there must be a debt, a duty or obligation owing from one person to another, a *res* to which the obligation attaches, which can be described with reasonable certainty, and an intent, expressed or implied that the property serve as security for the payment or obligation. 51 Am. Jur. (2d) *Liens* Section 24 (1970); 53 C.J.S. *Liens* Section 4 (1948). *See California Bank v. Leahy*, 129 Cal. App. 243, 18 P. (2d) 709, 711 (1933) ("Whenever, in law or equity, a lien is created or declared there are two things prominently concerned, namely, an obligation and a *res* or *rem* to which or upon which that obligation fastens itself."); *Harnsberger v. Wright*, 185 Va. 586, 39 S. E. (2d) 737, 738 (1946) (Equitable liens must rest on an expressed or implied contract. Moral obligations do not sustain equitable liens.).

A mere breach of contract does not give rise to an equitable lien. 51 Am. Jur. (2d) *Liens* Section 24 (1970); *U. S. v. Adamant Co.*, 197 F. (2d) 1, 10 (9th Cir.) ("there must be something more than the mere fact that a contract has been breached before a lien is impressed upon a specific fund."), *cert. denied sub nom. Bullen v. Scoville*, 344

U. S. 903, 73 S. Ct. 283, 97 L. Ed. 698 (1952); *Hallmark Manufacturing, Inc. v. Lujack Construction Co.*, 372 So. (2d) 520, 521 (Fla. App. 1979) (complaint alleging no more than breach of contract failed to state a claim for equitable lien); *McKenna v. Turpin*, 128 Ind. App. 636, 151 N. E. (2d) 303, 305 (1958) (where there has been nothing more than a breach of agreement to pay a commission to a broker, he is not entitled to equitable lien on property); *Hipps v. McKenzie*, 201 Tenn. 26, 296 S. W. (2d) 838, 839 (1956) (action for damages is remedy for breach of contract, not action for equitable lien on land); *Keyworth v. Israelson*, 240 Md. 289, 214 A. (2d) 168 (1965) ("A mere promise to pay a debt or obligation does not of itself, however, create a lien unless the intention to create it is apparent from the instrument and circumstances leading to it."). This is true even though the fund against which the lien is claimed was created through the efforts and outlays of the party claiming the lien. 53 C.J.S. *Liens* Section 4 (1948); *Oregon Mutual Insurance Co. v. Cornelison*, 214 Or. 501, 330 P. (2d) 161, 165 (1958) ("It is settled law that a mere promise to pay a debt out of a particular fund is not sufficient to create an equitable lien on the fund even though the fund was created through the effort and outlays of the party claiming the lien.").

Here, Carolina alleges a mere breach of contract. Nowhere is it alleged that it was the parties' intent, expressed or implied, that the note proceeds would serve as security for monies due from Courtney to Carolina. *See Georgia-Carolina Gravel Co. v. Blassingame*, 129 S. C. at 25, 123 S. E. at 326. Moreover, Carolina does not allege an inadequate remedy at law. It is hornbook law that equity will not impose an equitable lien where there is an adequate remedy at law. 51 Am. Jur. (2d) *Liens* Section 24 (1970); *Hallmark Manufacturing, Inc., v. Lujack Construction Co.*, 372 So. (2d) at 522; *Wilkinson v. Tarwater*, 393 S. W. (2d) 538, 542 (Mo. 1965); *Oregon Mutual Insurance Co. v. Cornelison*, 214 Or. 501, 330 P. (2d) at 166 (1958).

Carolina also argues that Section 15-15-60, Code of Laws of South Carolina, 1976, defeats SCN's claim to the note. That section reads:

In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any

setoff or other defense existing at the time of, or before notice of, the assignment. But this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon good consideration before due.

We reject Carolina's argument for two reasons. First, even if the statute applies to SCN as the holder of a perfected security interest, it is clear from a reading of the statute that it subjects the assignee to defenses that could be asserted against the assignor only in an action brought by the assignee on the note. *See Westbury v. Simmons*, 57 S. C. 467, 480, 35 S. E. 764, 769 (1900). Since SCN is not suing on the note, the section is inapplicable. Secondly, there is nothing in the transcript of record indicating that Carolina presented this issue to the trial court. An issue not presented to the trial court is not before this Court for review. *Mackey v. Kerr-McGee Chemical Co.*, 280 S. C. 265, 271, 312 S. E. (2d) 565, 568 (Ct. App. 1984).

Finally, Carolina asserts that even if SCN is entitled to a determination that its claim to the note proceeds is superior to that of Carolina, SCN is not entitled to an order requiring the Clerk of Court to pay the funds to it. Carolina argues that such order grants relief not prayed for in the pleadings. We disagree. While SCN did not and indeed could not at the time it filed its pleadings, ask that funds be paid to it because the note was not then due, it did by proper motion request the funds after the note became due. Carolina was afforded ample opportunity to contest SCN's right to the funds. Moreover, since the trial judge found that Carolina had no claim to the funds superior to SCN, we fail to see how his ruling prejudiced Carolina. We also note that the order in question was temporary and was entered before SCN, a real party in interest, became a party to this lawsuit. Certainly, such order could not have prejudiced SCN's right to request payment of the funds after the court had determined it was entitled to the funds.

Accordingly, the order of the trial judge is

Affirmed.

SHAW and BELL, JJ., concur.