2548

Jane DOE, Appellant v. Mary ROE and Sharonview Federal
Credit Union, Respondents.

(475 S.E. (2d) 783)

Court of Appeals

*Kenneth E. Merriman,* Florence, *for appellant.*

*E. Hood Temple,* of *The Hyman Law Firm; Mary Layton Wells,* of *Scott & Jernigan, Joseph P. McLean,* of *Clarke, Johnson, Peterson & McLean,* Florence, *for respondents.*

Heard June 5, 1996.

Decided July 22, 1996; Reh. Den. Sept. 24, 1996.

*Per Curiam:*

This case concerns the division of real and personal property between two individuals who were involved in an intimate homosexual relationship for a period of thirteen years. The plaintiff, Jane Doe,[1] brought this action for partition of real property along with a claim and delivery action for specified personal property. The defendant, Mary Roe, asserted a counterclaim based upon theories of constructive trust, partnership, and equitable lien. She also alleged a cause of action for claim and delivery for specified personal property along

---

[1] Because of the sensitive nature of the issues involved in this appeal, we have protected the confidentiality of the parties with assumed names.

with a demand for an accounting of a jointly owned bank account.[2] After a nonjury trial, the trial judge imposed a constructive trust and equitable lien in favor of Roe on the real property titled in Doe's name and undertook to divide the real and personal property. We reverse that portion of the order which imposed a constructive trust and equitable lien in favor of Roe and affirm the trial court's decision to deny Doe an offset for personal property.

### STANDARD OF REVIEW

A partition action is an equitable action. *Anderson v. Anderson*, 299 S.C. 110, 382 S.E. (2d) 897 (1989). Likewise, an action to declare a constructive trust or establish an equitable lien is in equity. *Lollis v. Lollis*, 291 S.C. 525, 354 S.E. (2d) 559 (1987); *Fibkins v. Fibkins*, 303 S.C. 112, 399 S.E. (2d) 158 (Ct. App. 1990). In an equitable action heard by the judge alone, the appellate court may find facts in accordance with its own view of the preponderance of the evidence. *Id.*

### FACTS

Jane Doe and Mary Roe met in June of 1979. Doe was twenty-one years old and Roe was twenty-seven. They became lovers and Doe moved into Roe's home. Doe was not working and owned no significant personal or real property. Roe was employed, owned a house, and had several automobiles. Roe testified Doe had occasional minimum-wage jobs until 1985 when Roe helped her obtain a job at Fluor Daniel. Until that time, Roe financially supported Doe.

In 1985, Roe became interested in purchasing some rental property as an investment. During her discussion of the matter with Doe, Roe testified Doe began inquiring what she was going to get out of their relationship. Roe asserted Doe was not contributing financially to their household at that time and had only recently became employed with Fluor Daniel. Roe admitted she was advised by Sharonview Federal Credit Union that she needed a co-signer on the loan based upon Sharonview's debt ratio guidelines. Roe testified she and Doe

---

[2] The defendant, Sharonview Federal Credit Union, is joined as a party based upon its first mortgage lien on the real properties in issue.

jointly purchased the property because of Doe's concerns over what she was going to get from their relationship.

Beginning in 1986, Doe began traveling out of state for her employer for extended periods of time. According to Doe, she sometimes would spend up to ten months of the year out of town. While out of town, Doe and Roe would communicate regularly by phone and mail. Doe admitted in cross-examination that she repeatedly communicated her love and commitment to Roe during these period of time. The record contains exhibits of cards and letters from Doe to Roe expressing her love and fidelity.

In 1989, Roe and Doe jointly purchased the Gregg Avenue property as a home. The transaction was handled by Roe with a power of attorney from Doe because she was working out of state. Roe testified she made the down payment and titled the property jointly at Doe's request. On cross-examination, Roe stated Doe was travelling extensively out of state and repeatedly stated "she would have to have a reason to come back to the Florence area. . . . And in doing this I thought that I gave her a reason even if it meant that I was buying love; that's what I did."

In 1990, Roe was offered a job promotion which would have necessitated a move to Charlotte. Roe testified she wanted the promotion very much as she had worked hard for a number of years. However, Doe stated she was not going to move to Charlotte. As a result of Doe's objections, Roe turned down the promotion.

In 1992, Doe was working in Washington. Roe testified they communicated regularly and Doe repeatedly expressed her commitment to her. Roe continued to handle financial matters for Doe from South Carolina including payment of her bills. However, a serious rift occurred in the relationship when Doe admitted to Roe in May of 1992 that she was having an affair with another woman. Although Doe came back to South Carolina and resumed cohabitation with Roe, she moved out of the Gregg Avenue home in June of 1992.

### TRIAL COURT ORDER

In the order, the trial judge found two parcels of real property, McIver Road and Gregg Avenue, were purchased and jointly titled in Roe's and Doe's names during the course of

their relationship. With respect to McIver Road, the court found Roe made the down payment and paid the monthly mortgage payments. Additionally, she financed and personally labored upon the improvements to the property which was used as a rental investment. Roe paid off the mortgage since the parties separated. Doe did not produce and documentary evidence of financial contribution directly attributable to the McIver Road property. Based upon the evidence, the court concluded Doe had no right, title, or interest in the McIver Road property and ordered her to execute a deed transferring her interest in the property to Roe.

As to the Gregg Avenue property, the court found Roe made the down payment, paid the taxes and insurance, and funded substantial improvements to the home. Additionally, she made the mortgage payments and performed a great deal of physical labor involved with the home improvements. The court found Doe contributed a total of $16,600 to the Gregg Avenue property for improvements and other expenses. Based upon the proof of the combined contributions to the Gregg Avenue property, the court concluded Roe was entitled to 79.57% of the equity and Doe was entitled to 20.43%. The court held Roe was to retain ownership of the property and to pay Doe the value of her equity interest when Doe deeded her interest to Roe.

In making its conclusions concerning the division of the real estate, the court found Doe and Roe were involved in a confidential and intimate relationship when the properties were purchased. The trial judge concluded Roe was deeply in love with Doe and relied upon Doe's representations of devotion and faithfulness. Ultimately, however, Doe was not faithful to Roe. The court found Doe coerced and manipulated Roe into titling the real properties in their joint names by threatening to end their relationship. As a result of the love and devotion Roe held for Doe, and the representations made by Doe, the court found the real properties were placed in joint names. The court also noted Doe's name was required to be placed on the mortgages to satisfy a financial ratio, but "it is clear that the motivating force to place the assets at issue in joint names arose from the compelling and overwhelming love Roe held for Doe and the fear that Roe would lose Doe if she did not place the assets in joint names." The court stated as follows:

The disparity between the parties' contribution to the acquisition and maintenance of the jointly titled assets is in favor of Roe. The evidence in the record is clear and convincing that the equitable theories of constructive trust and equitable lien must be imposed to prevent a grave hardship to Roe and certain unjust enrichment to Doe. It is axiomatic and apodictic that one who comes to court looking for equity must first do equity, and clearly, Doe misled, misrepresented, and manipulated Roe during the course of their relationship. This Court cannot shield and protect such inequitable actions.

With respect to the disputed vehicle, the court found Roe used her funds to finance the purchase of a 1990 Mazda King Cab truck. The title was issued to Roe or Doe. Doe took the vehicle to Washington where she was working for her employer. The vehicle was involved in an accident which Doe did not disclose to Roe. Doe received the insurance settlement and forged Roe's signature. She also transferred the vehicle title solely to her name, traded the truck, and received $8,500 for it. Roe continued to be obligated for the payments. The court found both Roe and Doe were entitled to fee simple ownership of the truck and ordered Doe to pay $4,250 to Roe.

The court also found Roe and Doe had a joint bank account with a balance of $19,969.05 in June of 1992. Doe closed the account without Roe's knowledge. The court concluded Doe was entitled to ownership of those funds based upon the evidence of her contributions to the bank account.

## ISSUES

On appeal Doe asserts the trial judge erred in finding that Roe established the existence of either a constructive trust or an equitable lien. She also contends the court erred in failing to grant her an offset on the monies she was ordered to pay Roe for the truck because Roe had removed funds from Doe's bank account.

## I.

The trial court concluded the evidence in the record was clear and convincing that the equitable theories of constructive trust and equitable lien should be imposed on the McIver

Road and Gregg Avenue properties in order to prevent a grave hardship to Roe and unjust enrichment to Doe. We disagree.

A constructive trust arises whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding legal title. *Lollis v. Lollis*, 291 S.C. 525, 354 S.E. (2d) 559 (1987). A constructive trust results from fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. *Id.* "Fraud is an essential element, although it need not be actual fraud." *Id.* 291 S.C. at 529, 254 S.E. (2d) at 561. "A constructive trust arises against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of a wrong or by any form of unconscionable conduct, artifice, concealment, or questionable means and against good conscience, either has obtained or holds the right to property which he ought not in equity and good conscience hold and enjoy." *Halbersberg v. Berry*, 302 S.C. 97, 99, 394 S.E. (2d) 7, 13 (Ct. App. 1990). In order to establish a constructive trust, the evidence must be clear, definite, and unequivocal. *Lollis*, 291 S.C. 525, 354 S.E. (2d) 559.

The sole evidence presented by Roe in this case to warrant imposition of a constructive trust is Doe's repeated question as to what she was going to get from the relationship. This query, not an unusual one in any long-term relationship, is not sufficient to establish fraud, abuse or confidence, or violation of a fiduciary duty.[3] There was no evidence that Doe coerced Roe into placing the property in both names or fraudulently did so. This relationship endured for thirteen years. There is not suggestion Doe entered the relationship in order to acquire property from Roe or that she terminated the relationship after achieving her fraudulent goal. Indeed, these partied continued to cohabit together for some seven years following acquisition of the McIver Road property and three years following purchase of the Gregg Avenue property.

---

[3] We are aware that some courts have held that a homosexual relationship may give rise to a confidential relationship. *See Bramlett v. Selman*, 268 Ark. 457, 597 S.E. (2d) 80 (1980); *Weekes v. Gay*, 243 Ga. 784, 256 S.E. (2d) 901 (1979). It is not necessary for us to reach this issue, however, since we find the proof was not sufficient to establish a constructive trust.

Likewise, there was insufficient evidence to show the existence of the confidential relationship between the parties which was somehow abused by Doe. The Restatement, Second, Trusts, had defined a confidential relationship as existing "when one has gained the confidence of the other and purports to act or advise [with] the other's interest in mind." Restatement, Second, Trusts, § 2, Comment B (1957). If either party had the superior position with respect to business acumen, it was Roe rather than Doe. Roe took the lead in negotiating the purchase of both parcels and assumed responsibility for their upkeep and management.

An equitable lien is neither an estate nor property in the thing itself, but is simply a right of a special nature over the thing, which constitutes a charge or encumbrance upon it, so that the very thing itself may be proceeded against in equity for payment of a claim or debt. *Carolina Attractions, Inc. v. Courtney*, 287 S.C. 140, 337 S.E. (2d) 244 (Ct. App. 1985). For an equitable lien to arise, there must be a debt owing from one person to another, specific property to which the debt attaches, and an intent, expressed or implied, that the property will serve as security for the payment of the debt. *Perpetual Federal Sav. and Loan Ass'n v. Willingham*, 296 S.C. 24, 370 S.E. (2d) 286 (Ct. App. 1988).

There was no evidence presented that Doe owed a debt to Roe. Roe herself characterized the relationship as an "emotional partnership." She testified: "A business partnership, no. We never talked about a business partnership. All we had was an emotional partnership." Under these circumstances, no equitable lien in Roe's favor was created when the property was placed in joint names.

## II.

Doe argues the court erred in not allowing her an offset on the sum she was ordered to pay Roe for the 1990 Mazda truck based upon Roe's removal of money from Doe's bank account. In February of 1992, Roe withdrew $4,800 from the joint bank account to purchase an automobile. She testified she and Doe discussed this matter before she withdrew the money. Given Doe's admitted conduct concerning the 1990 Mazda truck, we find no error in the court's decision not to credit Doe with this sum.

Affirmed in part and reversed in part.

HOWELL, C.J., and CONNOR and HEARN, JJ., concur.