THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 Leslie P. Barrett, Respondent,
 
 
 
 
 

v.

 
 
 
 Charlie Floyd Flowers, Emanule Flowers and Countrywide Home
 Loans, Inc., Defendants,
 
 
 Of Whom Countrywide Home Loans, Inc. is Appellant.
 
 
 
 
 

Appeal From Horry County
Nate Fata, Special Referee 

Unpublished Opinion No.  2011-UP-007 
 Heard November 4, 2010  Filed January 20,
 2011
 Withdrawn, Submitted and Refiled June 2,
2011

AFFIRMED

 
 
 
 Richard M. Smith, of Georgetown, and
 Robert L. Widener, of Columbia, for Appellant.
 William A. Bryan, of Surfside Beach, for Respondent.
 
 
 

PER CURIAM: Leslie
 P. Barrett filed this action against Charlie Floyd Flowers, Emanule Flowers,
 and Deutsche Bank National Trust Co. (Deutsche) alleging a one-half interest in
 property titled to Charlie, and subject to a mortgage interest.  Barrett also
 alleged battery, intentional infliction of emotional distress, and outrage
 against Emanule.  Charlie and Emanule defaulted, and the matter was referred to
 the special referee. 
The referee granted Deutsche's motion to dismiss
 because the mortgage it serviced for Lumina Mortgage Company, Inc. (Lumina) had
 been satisfied.  The special referee denied Charlie and Emanule's motion to set
 aside entry of default, awarded Barrett $105,000 in actual and $20,000 in
 punitive damages, and found Barrett was entitled to a one-half interest in the
 subject property.  The referee granted Countrywide Home Loans, Inc.'s
 (Countrywide) motion to intervene, and ruled Countrywide had no claim or lien
 against the property.  Countrywide appeals.  We affirm.

FACTS
Barrett and Emanule lived together from 1994 until
 March 2007.  Two children were born of the relationship.  Barrett was a
 stay-at-home mom for much of the time the parties were together, but she worked
 outside the home for the last years of their cohabitation. 
Barrett and Emanule purchased the subject property in
 2005, using funds obtained from a purchase money mortgage given to Lumina.  Barrett
 provided the down payment and funds necessary to close, using gifts from her
 mother and a personal loan from her mother's husband.  Barrett also made some mortgage
 payments.  Because Barrett was unemployed at the time of the purchase, Barrett
 and Emanule agreed that Emanule would apply for the Lumina loan, and the property
 would be deeded solely in his name.  Although Emanule allegedly agreed to convey
 a one-half interest in the property to Barrett, he never did. 
Barrett testified Emanule mentally and physically
 abused her beginning in 1994 and continuing throughout the relationship.  Barrett
 suffered black eyes, being pulled up and down stairs, permanent scarring to her
 face, beatings in front of the children, a fractured shoulder, a broken nose, broken
 teeth, jaw and ear injuries, death threats, and other physical and mental
 abuse.  Emanule forced Barrett and the children from the house on March 2,
 2007. 
On March 29, 2007, Emanule's father, Charlie Flowers,
 applied to Countrywide for a refinance loan on the property, indicating he had
 owned the property since 2005.  Countrywide hired Edward McDonnell to handle
 the closing.  McDonnell testified his office received Countrywide's request for
 a title search on March 30, 2007.  By deed dated April 2, 2007, and recorded
 April 3, 2007, Emanule conveyed the property to Charlie for a stated
 consideration of $5.00.  McDonnell and Countrywide received copies of the deed.
  McDonnell received the title search report on April 6, 2007, showing Charlie
 as the owner, and reporting the Lumina mortgage. 
Barrett filed a lis pendens on April 18, 2007, and
 this action on May 8, 2007.  On May 10, 2007, Countrywide recorded a mortgage
 on the property that secured a loan to Charlie for $167,250.  Another title
 search was completed on May 15, 2007.  McDonnell testified the search was certified
 as of April 24, 2007, and indicated "[n]o updates to title."  The
 search report failed to reflect Barrett's April 18, 2007 lis pendens.  The
 Lumina mortgage of $125,771.37 was satisfied of record on May 18, 2007, from
 the Countrywide loan disbursement funds. 
By order filed September 24, 2007, the special referee
 awarded Barrett actual and punitive damages, a one-half interest in the
 property, and set aside the deed conveying the property to Charlie.  The
 referee deferred the execution of the deed back to Barrett pending a hearing on
 Countrywide's claims. 
After the hearing on Countrywide's claims, including
 entitlement to an equitable lien, the special referee found Countrywide had no lien
 against the property.  The referee issued deeds setting aside the Flowers' deed
 effective April 2, 2007, and deeded a one-half interest to Barrett effective
 the date the lis pendens was filed, April 18, 2007.  Countrywide moved to
 reconsider.  After a hearing, the referee denied the motion.  This appeal
 follows.

STANDARD OF REVIEW
An
 action to establish an equitable lien and lien priorities is an action in
 equity.  Fibkins v. Fibkins, 303 S.C. 112, 115, 399 S.E.2d 158, 160 (Ct.
 App. 1990).  In reviewing equitable matters, this court may review based on its
 own view of the preponderance of the evidence.  Williams v. Wilson, 349
 S.C. 336, 339-40, 563 S.E.2d 320, 322 (2002).  However, we should not disregard
 the findings of the special referee, who was in a better position to weigh the
 credibility of witnesses.  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C.
 229, 237, 391 S.E.2d 538, 543 (1989) (affording deference to the master in an
 equitable action).
LAW/ANALYSIS
I.  Equitable Lien[1]
Countrywide argues the special referee
 erred in refusing to grant it an equitable lien to the extent of the Lumina
 mortgage, thereby granting Barrett a windfall.  We disagree.
"For an equitable lien to arise,
 there must be a debt owing from one person to another, specific property to
 which the debt attaches, and an intent, expressed or implied, that the property
 will serve as security for the payment of the debt."  Doe v. Roe,
 323 S.C. 445, 453, 475 S.E.2d 783, 787 (Ct. App. 1996).  In this case, there is
 no debt owed by Barrett or Emanule to Countrywide, only a debt owed to
 Countrywide by Charlie, who by virtue of the referee's deed setting aside the
 April 2, 2007 deed, had no interest in the property.  See 59 C.J.S. Mortgages § 228 (2009) (stating a mortgagee cannot acquire any greater interest in property
 than the mortgagor possesses).  Furthermore, there was no evidence of intent by
 Barrett or Emanule that the property would serve as security for the payment of
 the debt.  See Carolina Attractions, Inc. v. Courtney, 287 S.C.
 140, 146, 337 S.E.2d 244, 247 (Ct. App. 1985) (finding no entitlement to an
 equitable lien where there was no allegation that it was the parties' intent,
 expressed or implied, that note proceeds would serve as security).  Because
 Countrywide cannot prove the requirements necessary to establish an equitable
 lien, we affirm the special referee.  
Furthermore, "hornbook law [provides]
 that equity will not impose an equitable lien where there is an adequate remedy
 at law."  Id.; see Georgia-Carolina Gravel Co. v.
 Blassingame, 129 S.C. 18, 24-25, 123 S.E. 324, 326 (1924) (finding where no
 facts were alleged showing plaintiff's remedy at law was inadequate, equity
 would not assume jurisdiction on the theory of an equitable lien).  Our supreme
 court recently reiterated that "[t]he court will reserve its equitable
 powers for situations when there is no adequate remedy at law."  Strategic
 Res. Co. v. BCS Life Ins. Co., 367 S.C. 540, 544, 627 S.E.2d 687, 689
 (2006).   
"An 'adequate' remedy at law is one
 which is as certain, practical, complete and efficient to attain the ends of
 justice and its administration as the remedy in equity."  Santee Cooper
 Resort, Inc. v. S.C. Pub. Serv. Comm'n, 298 S.C. 179, 185, 379 S.E.2d 119,
 123 (1989).  To be entitled to an equitable lien, it was incumbent upon
 Countrywide to allege and prove the lack of an otherwise adequate remedy.  See Strategic Res. Co., 367 S.C. at 544, 627 S.E.2d at 689 (stating the
 party in an equitable action for injunction has the burden of proving the lack
 of an adequate remedy at law).  We conclude Countrywide's rights under its
 contract with Charlie provide Countrywide with an adequate remedy at law.  
We find no support in the cases
 Countrywide relies on.  In arguing it is entitled to an equitable lien because
 otherwise Barrett receives a windfall, Countrywide cites Edwards v.
 Columbia, S.C. Teachers Fed. Credit Union, 276 S.C. 89, 275 S.E.2d 879
 (1981).  In Edwards, Mrs. Smith owned property subject to a note and
 second mortgage of the credit union, of which Mr. Smith was a member.  276 S.C.
 at 90, 275 S.E.2d at 880.  The credit union provided a life insurance policy as
 a fringe benefit of membership, which would satisfy the loan upon the death of
 the member.  Id.  Mrs. Smith sold the property to Edwards, who assumed
 the mortgages on the property, including the second mortgage.  Id.  Upon
 Mr. Smith's death, the credit union satisfied the second note and mortgage, and
 assigned them to Mr. Smith's estate.  Id.  Edwards sought a
 determination that the note and mortgage were satisfied, and Mrs. Smith had no
 right of subrogation.  Id.  The supreme court found Mr. Smith would have
 been entitled to subrogation to enforce the second mortgage as if he had paid
 the loan to the credit union from his own funds.  Id. at 91, 275 S.E.2d
 at 881.  The court found that to give Edwards credit for the payment of the
 second mortgage would give her a windfall, to which she was not entitled.  Id. at 91, 275 S.E.2d at 880.  Edwards, however, is an equitable subrogation
 case.[2] 
 We find no application of Edwards to this action seeking an equitable
 lien.
Countrywide contends the special referee
 should have granted it an equitable lien because the remedy for fraud is to
 place the injured party in the same position he would have enjoyed absent the
 fraud.  In support of this argument, Countrywide relies on Gilbert v.
 Mid-South Machinery Co., 267 S.C. 211, 227 S.E.2d 189 (1976).  In Gilbert,
 the plaintiff filed a fraud action for damages based on the sale and purchase
 of a business.  267 S.C. at 217, 227 S.E.2d at 191.  The supreme court affirmed
 a jury verdict of actual and punitive damages, citing the general rule that an
 injured party in a fraud action is entitled to recover such damages as will
 place him in the same position he occupied prior to the fraud.  Id. at
 223, 227 S.E.2d at 194.  We find the general law regarding damages in a fraud
 action does not apply in this case. 
Countrywide next argues at a minimum, the special
 referee should have granted an equitable lien as to the amount of Emanule's
 interest in the property, because otherwise he is rewarded for his
 participation in the fraudulent transfer to Charlie.  Countrywide first raised
 this issue in its proposed order submitted to the referee after the hearing on
 the merits.  We find this issue is not preserved for our review.  See McGee
 v. Bruce Hosp. Sys., 321 S.C. 340, 347, 468 S.E.2d 633, 637 (1996) (finding
 an issue not timely raised is not preserved for appellate review); Beaufort Cnty. v. Butler, 316 S.C. 465, 468, 451 S.E.2d 386, 388 (1994)
 (finding an issue not raised at the hearing on the merits was not preserved for
 review).
Finally, Countrywide urges this court to
 utilize its equitable powers to invent a mode of relief, if necessary, to
 enable it to secure an equitable lien.  We decline, however, because the powers
 of equity are not unlimited.  See 27A Am.Jur.2d Equity § 76 (2008)
 ("The court must have a cognizable basis for granting equitable relief and
 is not authorized to take a particular course of action simply because it
 thinks such action is just and appropriate."); see generally Cagle
 v. Shaefer, 115 S.C. 35, 42, 104 S.E. 321, 323 (1920) (finding the court
 has the power in equity to grant specific performance but "the power is
 not unlimited, as seems to be supposed by some.  It is commensurate with, but
 it is limited by, the necessity which calls for the existence and exercise of
 it.").
II.  Lis Pendens
Countrywide argues the special referee erred in
 misapprehending the purpose, scope, and effect of the lis pendens filed by
 Barrett for the purpose of prioritizing liens on the property.  We need not
 address this issue based on our affirmation of the special referee's finding
 that Countrywide is not entitled to an equitable lien.  See Futch v.
 McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591,
 598 (1999) (stating an appellate court need not address an issue when a
 decision on a prior issue is dispositive).
III. Insurance
Countrywide argues the special referee erred in
 considering its title insurance policy.  We find no reversible error.  
At the hearing on Countrywide's counter and
 cross-claims, Countrywide moved in limine to bar the introduction of evidence
 of insurance.  The special referee reserved ruling on the issue.  When
 McDonnell was questioned during cross-examination about the title insurance
 policy, the special referee permitted the questioning, finding the policy
 relevant for purposes of notice.  In his order filed after the hearing on
 Countrywide's claims, the special referee stated:  "The evidence presented
 in the case showed that Countrywide was issued a policy of title insurance at
 the time its loan was closed.  Although Countrywide has objected to title
 insurance being considered, this is an equitable proceeding, and it would
 appear relevant."  In its motion for reconsideration, Countrywide argued
 the special referee erred in considering the existence of insurance.  At the
 hearing on the motion for reconsideration, the special referee stated: 
 "Your last point about the insurance, that's not part of my analysis when
 it comes to . . . reviewing the arguments and the Motion for
 Reconsideration."  In the order denying Countrywide's motion for
 reconsideration, the special referee concluded: "Although [insurance was]
 mentioned in this Court's previous order, whether or not Countrywide has title
 insurance protection is not part of this Court's analysis of the result it
 reached in this case."  The special referee specifically noted it did not
 rely on Countrywide's title insurance policy.  We, therefore, find no error.
IV.  Other Remedies
Countrywide contends the special referee erred in
 considering its possible recourse against Charlie.  We disagree.
As previously discussed, a court of equity will not
 impose a lien where there is an adequate remedy at law.  Carolina
 Attractions, Inc. v. Courtney, 287 S.C. 140, 146, 337 S.E.2d 244, 247 (Ct.
 App. 1985).  Because we find Countrywide's
 right to recourse against Charlie provides it an adequate remedy at law, we
 find no error by the special referee in considering Countrywide's recourse
 against Charlie.  

CONCLUSION
Based on the foregoing analysis, the order of the special
 referee is
AFFIRMED.
FEW, C.J., SHORT and WILLIAMS, JJ., concur.  

[1] We combine Countrywide's first, second, and fifth
 issues in this analysis.
[2] The
 elements of the doctrine of equitable subrogation are: (1) the party claiming
 subrogation has paid the debt; (2) the party was not a volunteer; (3) the party
 was secondarily liable for the debt or for the discharge of the lien; and (4)
 no injustice will be done to the other party by the allowance of the equity.  United
 Carolina Bank v. Caroprop, Ltd., 316 S.C. 1, 3, 446 S.E.2d 415, 416 (1994).