16278

BANK OF COMMERCE OF CHARLOTTE, N. C. v.
WATERS *ET AL.*
(56 S. E. (2d) 350)

*Messrs C. T. Graydon and Augustus T. Graydon,* of Co-lumbia, *for Appellant,*

*Messrs. Baker & Baker,* of Columbia, *for Respondents,*

November 9, 1949.

STUKES, Justice.

The respondent Broome will also be referred to as the defendant. He is in the restaurant business in Columbia. On and before December 14, 1945 he purchased in Charlotte, North Carolina, from E. I. Sinkoe, trading as Charlotte Salvage Company, certain fixtures and equipment for which he executed a conditional sales contract bearing that date covering the property and securing the payment of $4,430.40 in deferred installments of $193.90, payable on the fifteenth days of each month beginning January 15, 1946, with interest upon the installments after maturity. After recital of the transaction, description of the articles of property and prices, the instrument contains the form of a promissory note payable to the "seller" or order at Industrial Loan and Investment Bank, Charlotte. There are also other obligations, that the purchaser should keep the property free from taxes, liens and encumbrances, satisfactorily insured against various hazards in an amount always equal to the unpaid balance, the property should not be hired out, removed from purchaser's county or sold without written consent of the seller who should have the right to possession before and after default. In addition to all of these the following provisions are in the contract: "In the event the Purchaser shall fail or neglect to pay when due any one or more of the installments required by the terms hereof, or in the event the Purchaser shall violate or fail to perform any one or more of the Purchaser's covenants as herein set forth, or in the event the above described personal property shall be seized under any legal process against the Purchaser, or in the event of the commencement of bankruptcy, receivership or other insolvency proceedings against the Purchaser, then,

and in any one or more of such events, the entire unpaid balance under the terms hereof shall immediately become due and payable in full, and the Seller, or his or its assigns, shall have the right to sell the above described personal property or any part thereof at public auction to the highest bidder for cash after first posting ten (10) days' notice of the time and place of sale on the bulletin board at the Mecklenburg County Court House, Charlotte, N. C., and after payment of the expenses of such sale shall apply the residue of the proceeds of such sale to the payment of the unpaid balance under the terms hereof and the excess, if any, to the Purchaser; and it is expressly agreed that the Seller, or his or its assigns, shall have the legal right to bid and become the lawful purchaser at any such sale."

On December 17, 1945, the paper was "discounted", that is, it was sold and assigned for value to the bank designated in it, which thereafter by change of name became the plaintiff in this action and is appellant. Schedule of the due dates of the deferred payments was also introduced in evidence and it contains record of the payments. They were made with fair regularity each month through December 1946, after which they were irregular but continued through February 1948 and until the total amount of $3,630.00 was paid, which left a balance of $881.01 due on the account.

Action in claim and delivery was commenced in March, 1948, upon complaint which alleged default, demand and refusal of delivery of the property, the amount due, and prayed for the usual relief in such cases.

The defendant filed answer and counterclaim in which the original transaction was admitted but alleged an overcharge, referred to as an "accounting error", discovered after execution of the obligation as were defects in the property, whereupon defendant so informed Sinkoe who acquiesced and gave defendant a credit memorandum in the amount of $1,367.50, which reduced defendant's obligation so that he has overpaid it to the bank to the extent of

$486.49, in which amount defendant asked judgment against plaintiff. There was reply by which the material allegations of the answer and counterclaim were denied and that if there was a credit memorandum, it applied to another transaction, was not authorized by plaintiff and does not affect its cause of action.

Plaintiff also demurred and moved to strike the answer and counterclaim upon the ground that defendant knew of the discount of his paper with the bank and the subsequent credit memorandum was of no effect upon the rights of plaintiff as assignee. The demurrer and motion were overruled by formal order of the court and the case proceeded to trial by jury.

Plaintiff consistently objected to the introduction in evidence of the credit memorandum upon the ground that the obligation sued upon is a negotiable instrument and plaintiff as assignee was a purchaser for value before maturity and, in any event, credit given after assignment was of no effect upon the rights of plaintiff. The objections were overruled and the credit memorandum was received in evidence. It is as follows:

Dec. 11-46

"Doug Broome Cafe

"Columbia, S. C.

"Due credit to above on acct. of contract Ind. Loan & Inv. Bank $1,367.50.

"Charlotte Salvage Co.,

"E. I. Sinkoe."

Sinkoe was a reply witness for plaintiff and he testified that the memorandum referred to another transaction and did not represent a credit upon defendant's obligation to plaintiff which arose from the sale and assignment by the witness of the paper to the plaintiff.

The case was submitted to the jury which returned verdict in favor of the defendant for the full amount sought by

him in his counterclaim. Subsequent motion for judgment *non obstante veredicto,* or in the alternative, for a new trial, was refused and this appeal followed. The case was tried under the law of this State without reference to the law of North Carolina.

The appellant has submitted three questions by the first of which it is contended that the instrument sued upon was negotiable, second, that the defendant was estopped by his conduct from claiming the credit against the assignee, and third that, regardless of the negotiability of the instrument, defendant could not after the assignment obtain release of the debt from the assignor. Respondent makes counter-statement of the questions in his brief but the difference is immaterial.

Of primary importance is whether the instrument in suit was negotiable. The answer is that it was not, under the following quoted portions of Section 6756 of the Code which is part of the Uniform Negotiable Instruments Law, enacted in 1914: "An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. * * *" It is plainly violative of this provision and the point needs little or no elaboration.

Before the comparatively recent enactment of the statute our courts had arrived at about the same rule. The development of the law may be seen by reference to the following decisions: *Wallace v. Dyson,* 1 Speers 127; *Barnes v. Gormon,* 9 Rich 297; *First National Bank of Charleston v. Gary,* 18 S. C. 282; *Carroll County Savings Bank v. Strother,* 28 S. C. 504, 6 S. E. 313; *First Nat. Bank of Richmond, Ind., v. Badham,* 86 S. C. 170, 68 S. E. 536, 138 Am. St. Rep. 1043. Support for the results of these decisions may be found in cases from other courts which are collected in annotations in 28 A. L. R. 699, 44 A. L. R. 1397, 45 A. L. R. 1074, and 102 A. L. R. 1095. See also, 7 Am. Jur. 889 *et seq.,* sec. 177 *et seq.,* and 10 C. J. S., Bills and Notes, page 534, § 88 *et seq.,* also p. 593, § 141 *et seq.* Conflicts in

the decisions of the various Courts continue even under the Uniform Law, but no case has been cited and none found which constitutes precedent for conclusion of negotiability of the paper involved in this action, in view of the contents of it.

The other questions have to be considered in the light that so far as they depend upon fact, the contentions of appellant have been foreclosed by the verdict of the jury. The major issue was the applicability of the credit memorandum to the transaction in suit. That it was so applicable was found by the jury. Because of the non-negotiability of the contract, evidence of the credit was relevant and, certainly in view of the identification of it in testimony by Sinkoe, it was properly admitted. The meaning of the verdict in this respect simply is that the jury gave credence to the testimony of respondent rather than to that of this witness. While the memorandum was dated about a year after the sale (and assignment) it related to it and the subject of it existed before the assignment of the contract.

The facts in evidence are not sufficient to support a finding of estoppel of respondent to claim against appellant the offset of the credit, principally because there is no evidence of misrepresentation by him to appellant and none of reliance or change of position by the·latter. The continued payments are insufficient to estop. *Patterson v. Cleveland,* 177 S. C. 514, 181 S. E. 890. And the fact that respondent made disposition of the property contrary to the terms of the contract is of no moment. His explanation of delay in his claim of the credit is that he had misplaced the memorandum and that as soon as he located it he discontinued payments to appellant. That the jury believed him is implicit in their verdict.

The principle that a defense or offset good against the assignor at the time of the assignment of a non-negotiable obligation is good against his assignee, in the absence of estoppel or other countervailing circumstance, is embodied

in Sec. 398 of the Code, cited and relied upon by respondent. It is as follows: "In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before due."

There is danger in stretching facts to constitute waiver or estoppel to assert an offset or defense because such a holding which is unwarranted by the evidence would nullify the cited statute and clothe a non-negotiable obligation with the attributes of negotiability. *Woodrow v. Frederick,* 133 S. C. 431, 443, 131 S. E. 598; *Noland v. Law,* 170 S. C. 345, 361, 170 S. E. 439.

However, the conclusion that the credit evidenced by the memorandum was available as an offset against appellant's demand and that the jury so found the facts did not warrant verdict against appellant by way of counterclaim for the alleged amount of overpayment. Comparable was the situation in *Sullivan v. Blythe* in which memorandum opinion is found in 14 S. C. 621, here quoted: "Action by assignee of a sealed note against the maker. Defendant set up debt due him by assignor before notice of assignment, and called it a counterclaim, but demanded no relief against plaintiff. Evidence offered at the trial to prove this equitable defence was objected to, because pleaded only as a counterclaim. Objection overruled and evidence admitted. Held, no error. Bliss' Code Pl., Sec. 389; Pom. on Rem.. Sec. 92; Code, Sec. 135." There, as here, the obligation of the assignor to the debtor was available as an offset but not as a counterclaim. The cited Code Sec. 135 is the present section 398, *supra.*

There are two patent considerations which militate against the propriety of respondent's recovery of his overpayment in this action. First, the general rule

which has been alluded to and which is stated in the following quotations: "Recovery and judgment on a counterclaim or setoff against an assignee, where based on a demand against the assignor, cannot, of course, be affirmative; it can be defensive only." 47 Am. Jur. 756. "Thus, in an action by an assignee, the defendant cannot recover a money judgment on a setoff existing against the assignor." 47 Am. Jur. 788. "It is well settled that in action by an assignee, a claim in favor of defendant against the assignor can be allowed as a set-off, counterclaim or reconvention, only to the extent of the claim sued upon, and judgment cannot be rendered against the assignee for the excess." 57 C. J. 524. Secondly, the case which was proved by respondent as to the excess paid by him to appellant was one of voluntary payment. The facts relating to the obligation were wholly within his knowledge and payments made by him to appellant under those circumstances are not recoverable. A very apt authority is *Shockley v. Wickliffe*, 150 S. C. 476, 148 S. E. 476. See, also, both opinions in *Moody v. Stem*, 214 S. C. 45, 51 S. E. (2d) 163.

For the reasons stated, the judgment is affirmed upon condition that respondent satisfy the money judgment recovered by him against appellant within ten days after the remittitur is filed in the lower court; if such satisfaction is not timely entered, new trial is ordered, and for these purposes the case is remanded to the Richland County Court.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.