20798

The NORTHWESTERN BANK, Appellant, v. Walter D. NEAL, Individually, and Industrial Chemical Company, Inc., Respondents.

(248 S. E. (2d) 585)

Jack G. Leader, of Spencer & Spencer, Rock Hill, for appellant.

B. D. Hayes, of Hayes, Brunson & Gatlin, Rock Hill, for respondents.

October 30, 1978.

NESS, Justice:

The trial court held that a note endorsed to the appellant bank was not negotiable and that the bank, as a matter of law, was not a holder in due course. We reverse.

Respondent Neal purchased a boiler from Thomas Equipment & Supply Company on August 9, 1973. On that date, Neal executed two separate documents: a note in the sum of $8,714.72 and a conditional sales contract. On the same date, the note and conditional sales contract were discounted and assigned for valuable consideration by Thomas to the appellant bank. Thomas assigned its security interest in the boiler to the bank and the appellant filed the requisite UCC financing statement.

Monthly payments to the bank were made by Thomas who eventually filed bankruptcy. Respondent Neal made only one $500 payment on the boiler, claiming it was defective.

The bank brought suit against respondents on the note as a holder in due course. However, at the close of appellant's case, the trial court ruled as a matter of law that the note and conditional sales contract merged and therefore were nonnegotiable, and the bank was not a holder in due course. At the close of all the evidence, the court refused to charge any of the requested sections of the Uniform Commercial Code.

The jury received the case on the basis that the appellant bank stood in the shoes of the original seller, Thomas, and was subject to any defenses that might be asserted against the seller. This was clear error. A suit by a holder in due course was improperly converted into a suit on a sales contract with the quality of the merchandise being an issue. The jury returned a verdict for the respondents on the erroneous theory that the bank had breached its warranty to respondents by selling a defective boiler.

■ Whether or not a writing is negotiable is governed by § 3-104(1) of the Uniform Commercial Code.[1] That section provides:

"(1) Any writing to be a negotiable instrument within this Chapter must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Chapter; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer."

The instant note clearly meets the above requisites of negotiability. The trial court held that under the *Bank of Commerce of Charlotte, N. C. v. Waters et al.*, 215 S. C. 543, 56 S. E. (2d) 350 (1949), the note merged with the conditional sales contract and could not be negotiable because it required certain conditions. While it is true that the conditional sales contract may not have been a negotiable instrument because it failed to meet the unconditional requirement of UCC § 3-104(1)(b), that does not render the promissory note nonnegotiable.

We reject the single contract theory embraced by the trial court. The *Bank of Commerce* case, relied on by the lower

[1] The Uniform Commercial Code is contained in Title 36 of the Code of Laws of South Carolina (1976).

court, is inapplicable because it involved a conditional sales contract with an attached note; here, the contract and the note were two separate documents. As stated in UCC § 3-119(2): "A separate agreement does not affect the negotiability of an instrument."

We conclude that the trial court erred in holding that the two documents integrated into one writing. Our conclusion is consistent with the UCC's concept of negotiability. The official comment to UCC § 3-119(2) illustrates the trial court's error in adopting the single contract theory:

"Subsection (2) rejects decisions which have carried the rule that contemporaneous writings must be read together to the length of holding that a clause in a mortgage affecting a note destroyed the negotiability of the note. The negotiability of an instrument is always to be determined by what appears on the face of the instrument alone, and if it is negotiable in itself a purchaser without notice of a separate writing is in no way affected by it. If the instrument itself states that it is subject to or governed by any other agreement, it is not negotiable under this Article; but if it merely refers to a separate agreement or states that it arises out of such an agreement, it is negotiable."

Having determined that the appellant bank possess a negotiable instrument, the question remains whether the bank is a holder in due course. According to UCC § 3-302:

"(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

The bank paid value in good faith for the note on the day it was executed. It is undisputed that the assignment preceded any notice of claim about the merchandise sold. Accordingly, the bank qualifies as a holder in due course.

The trial court erred in concluding that the note was non-negotiable, and that the buyer's claims could be asserted against the bank. The very essence of a holder in due course is that he takes free of any defenses against the seller.

Reversed.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.