565 S.E.2d 316

BB & T OF SOUTH CAROLINA, a/k/a Branch
Banking and Trust Company, **Appellant**,

v.

Lisa Smith KIDWELL, William Brian Kidwell, d/b/a Signature
Residential Mortgage, and John H. Franklin, **Defendants**,

**Of whom John H. Franklin is, Respondent.**

No. 3514.

Court of Appeals of South Carolina.

Submitted May 6, 2002.

Decided June 10, 2002.

---

J. William Ray, of Greenville, for appellant.

David G. Ingalls, of Spartanburg, for respondent.

HOWARD, J.

This is a mortgage foreclosure action in which two competing mortgagees, having simultaneously recorded mortgages which cover the same real property, each claim first lien status. Branch Banking and Trust Company of South Carolina ("BB & T") appeals the master-in-equity's order finding John H. Franklin's recorded mortgage constitutes a first lien on certain commercial property, which Brian and Lisa Kidwell (collectively "the Kidwells") purchased from Franklin, and awarding Franklin prejudgment interest. BB & T also appeals the master's failure to award it attorney fees. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL HISTORY

In 1999, the Kidwells applied for a loan with BB & T to finance the purchase of commercial property which the Kidwells had contracted to buy from Franklin for $135,000. The Kidwells executed a Buy and Sell Agreement ("Agreement")

with Franklin, which listed the selling agent, David Allen, and indicated the only financing for the property would be "conventional." Following an appraisal of the property, BB & T approved a $100,000 loan. The Kidwells selected the closing attorney. BB & T then sent a letter to the closing attorney stating it required a first lien on the property as a precondition of the loan.

Prior to closing and without informing BB & T, Lisa Kidwell and Franklin executed an Addendum to the Agreement in which Franklin agreed to finance $85,000 of the $135,000 purchase price. Allen acquired a copy of the HUD Settlement Statement ("the Statement"), prepared in connection with the sale, several days prior to the closing and reviewed it for errors. The Statement denominated the Kidwells as "Borrowers" and BB & T as "Lender" and reflected BB & T's $100,000 mortgage on the property. In addition, the Statement showed an $85,000 balance due to Franklin as "Seller." BB & T did not receive a copy of the Statement until pretrial discovery was conducted.

The closing occurred on November 5, 1999, with Franklin, Allen, and the Kidwells present. No one from BB & T attended. The Kidwells executed two mortgages, one to BB & T for $100,000 and one to Franklin for $85,000. According to the Statement, signed by Franklin and the Kidwells, Franklin received $45,102.65 in cash from the closing, in addition to a note and mortgage from the Kidwells for $85,000, and the Kidwells received $42,325.84 in cash from the BB & T loan proceeds. The Kidwells also purchased other property from Franklin.

Following the closing, the closing attorney provided BB & T with a Preliminary Title Opinion dated November 8, 1999. The opinion indicated the Kidwells now owned the property, listed no unexpected exceptions, and did not mention any other mortgage liens or judgments.

Both BB & T's mortgage and Franklin's mortgage were recorded in Spartanburg County at 1:07 p.m. on November 9, 1999, in REM Book 2277. However, BB & T's mortgage was indexed beginning at page 321, and Franklin's mortgage was indexed beginning at page 326.

In January 2000, the Kidwells procured a $25,000 business credit line from BB & T. Before approving the loan, BB & T required an update on the status of the property's title. The same closing attorney prepared a Preliminary Title Opinion dated January 28, 2000. The letter noted the property was encumbered by Franklin's $85,000 mortgage. The attorney subsequently provided BB & T with a Final Title Opinion dated March 15, 2000, certifying that BB & T's mortgage constituted a valid first lien on the property, subject only to the exceptions listed in the Preliminary Title Opinion dated November 8, 1999. Ultimately, BB & T issued the $25,000 credit line, obtaining a second mortgage on the commercial property as collateral.

The Kidwells did not make payments as required on either BB & T mortgage. In June 2000, BB & T accelerated both mortgages, demanding payment, and then filed suit seeking foreclosure of its mortgages, claiming first and second lien positions.

BB & T named Franklin as a party-defendant. Franklin answered and counterclaimed, alleging his $85,000 mortgage constituted a first lien on the property. He also sought foreclosure, an award of attorney fees, and a deficiency judgment against the Kidwells. In reply, BB & T raised several equitable defenses including waiver, estoppel, and unjust enrichment.

Following a trial, the master concluded the Kidwells were liable to both BB & T and Franklin. The master found the Kidwells owed BB & T $106,065.24 for the purchase mortgage and $26,285.44 for the credit line mortgage, plus accruing interest, costs, and $3,500.00 in attorney fees. The master further determined the Kidwells owed Franklin $85,000 on his mortgage, an advance for taxes, plus $4,000 in attorney fees and costs. The master also held Franklin was entitled to prejudgment interest at the legal rate, beginning on August 1, 2000.

Although the master determined both BB & T and Franklin had properly secured their loans by executing mortgages on the Kidwells' property, he held Franklin's mortgage constituted the first priority lien. In reaching his decision, the master held the mortgage statute was "of no assistance in determin-

ing the priority" of the liens because both mortgages bore the identical time and date of recording. Therefore, he considered whether BB & T or Franklin had notice of the other's intent to obtain a first priority lien on the Kidwell's property.

The master held none of the documents executed by any of the parties provided Franklin with notice of BB & T's intent to obtain a first priority mortgage. He concluded the only persons involved in the transaction aware that both BB & T and Franklin sought first priority mortgages on the property were the Kidwells and the closing attorney. The master imputed the closing attorney's knowledge of Franklin's mortgage to BB & T on the theory that the closing attorney acted as BB & T's agent in the closing because the closing attorney prepared mortgage documents and rendered a title opinion for BB & T.

Therefore, the master concluded BB & T had notice of Franklin's lien, but Franklin did not have notice of BB & T's lien. Based on this conclusion, the master ruled Franklin's mortgage priority was superior to BB & T's. This appeal followed.[1]

## STANDARD OF REVIEW

An action to foreclose a real estate mortgage is an action in equity. *Hayne Fed. Credit Union v. Bailey,* 327 S.C. 242, 248, 489 S.E.2d 472, 475 (1997). In an action in equity, this Court is not required to disregard the findings of the master or referee. However, this Court may take its own view of the preponderance of the evidence. *Taylor v. Lindsey,* 332 S.C. 1, 3 n. 2, 498 S.E.2d 862, 863 n. 2 (1998); *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). Furthermore, this Court is not bound by the trial court's legal conclusions. *I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 718–19 (2000); *see also* S.C. Const. art. V, § 5 (providing this state's appellate courts have jurisdiction to correct trial court's erroneous legal findings in law and equity cases); S.C.Code Ann. §§ 14–3–320 & 14–8–200 (1976 & Supp.2001) (providing this state's appel-

---

1. After the master's order was filed, BB & T obtained an order staying the public sale of the property. Thus, the sale remains stayed and the debts remain unliquidated.

late courts have jurisdiction to correct trial court's erroneous findings of law in equity cases).

## DISCUSSION

### I. Priority Lien Status

On appeal, BB & T argues the master erred by finding Franklin's mortgage lien priority was superior to its own. We agree.

We note this is a novel issue in this State. This Court has not discovered, nor has either party to this appeal cited, any case in which the appellate courts of this State have been asked to determine the priority of multiple mortgages, secured with the same property, at the same time, by different parties. Furthermore, although South Carolina Code Annotated section 30-7-10 (Supp.2001) does not expressly address the particular facts and circumstances of this case, we do not agree with the master's conclusion that it is useless in determining priority between mortgages.

Section 30-7-10 provides, in relevant part:

All ... mortgages ... are valid so as to affect the rights of subsequent creditors ... without notice, only from the day and hour when they are recorded in the office of the register of deeds [for the county] ... in which the real property affected is situated. In the case of a ... subsequent lien creditor ... without notice ... the priority is determined by the time of filing for record.

In addition, South Carolina Code Annotated section 30-9-40 (Supp.2001), governing the indexing of instruments filed for recording, provides:

The register of deeds ... shall immediately upon the filing for record of any deed, mortgage, or other written instrument of the character mentioned in Section 30-7-10 or Chapter 9 of Title 36 enter it upon the proper indexes in his office, which constitute an integral, necessary, and inseparable part of the recordation of the deed, mortgage, or other written instrument for any and all purposes whatsoever....

The importance of proper recording practices as an integral part of providing notice to subsequent creditors has been

previously addressed by our supreme court. In *National Bank of Newberry v. Livingston*, our supreme court held:

> The rule supported by the best authority is that the record [of a mortgage] is constructive notice to creditors ... [as to] such facts as they would have learned from the record, if examined.
>
> . . .
>
> A mortgage duly recorded is notice not only of the existence of the mortgage, but of all its contents.... It is notice not only to purchasers but to the subsequent creditors as well.... The record imparts notice of all the facts which could have been ascertained by an actual examination thereof, including not only those recited in the record, but also material matters suggested thereby, which might be disclosed by reasonable inquiry.

155 S.C. 264, 284, 152 S.E. 410, 417–19 (1930) (citations omitted).

■ The indexing of recorded mortgages is intended to provide notice to persons making subsequent inquiries. There is no evidence the register of deeds has not complied with the mandates of section 30-9-40 in recording these two mortgages. Therefore, the later indexing of Franklin's mortgage, established by the later page entry, is evidence that BB & T's mortgage was presented first for recordation and is entitled to priority as the first to be recorded. *See Atlas Supply Co. v. Davis*, 273 S.C. 392, 395, 256 S.E.2d 859, 860 (1979) (Littlejohn, J., concurring) (indicating lien priority is based on the time at which an instrument is recorded and that recording is accomplished when an instrument is indexed). This inference is especially proper where the same closing attorney controlled both documents and presented them for recordation.

The master held BB & T, through the closing attorney, had constructive notice of Franklin's mortgage. Conversely, the master concluded the attorney was not Franklin's agent, and Franklin had no such notice of BB & T's mortgage. We disagree with the conclusion that Franklin had no notice of BB & T's lien.

While the documents prepared and executed by or on behalf of BB & T do not expressly note its expectation of a first lien on the property, the record before us belies any assumption

Franklin issued his mortgage without prior notice of BB & T's mortgage. The Agreement executed by Franklin and the Kidwells specifically conditioned the transaction on the Kidwells' ability to obtain "conventional" financing for the purchase. Both the Addendum executed by Lisa Kidwell and Franklin, as well as the HUD Statement signed by Franklin, indicated "Seller" financing.

 Furthermore, the closing statement fully informed Franklin that BB & T was extending a loan to the Kidwells in the amount of $100,000 to purchase property with a contractually established value of $135,000. The subsequent contract modification provided in excess of $42,000 to the Kidwells to facilitate their purchase of other property from Franklin, but in doing so, placed a combined indebtedness encumbering the property of $50,000 in excess of the value of the property. Under these circumstances, we do not share the master's belief that the bank was as informed as Franklin of this transaction. Thus, we deem any constructive notice BB & T may have had regarding Franklin's mortgage was no greater than Franklin's actual notice of BB & T's mortgage.

In light of the expressed gravity of the requirement that recorded documents be properly indexed and absent proof to the contrary, we presume the filing authority complied with the mandates set forth in section 30–9–40. Reading the requirements of section 30–7–10 in conjunction with the mandates of section 30–9–40 establishes that, in the case of documents recorded on the same date and at the same time, legal priority be given to document indexed first. We conclude from the contract, the Addendum, the closing documents, and the remaining transactions with the Kidwells, that Franklin was fully aware of BB & T's mortgage lien. Accordingly, we hold the master erred in giving Franklin's mortgage first lien priority.

## II. Prejudgment Interest

BB & T next argues the trial court erred in awarding Franklin prejudgment interest on his mortgage because the mortgage agreement itself indicates a zero percent interest rate. We disagree.

■ "Prejudgment interest is allowed on obligations to pay money from the time when payment is demandable, either by agreement of the parties or by operation of law, if the sum is certain or capable of being reduced to certainty." *Future Group, II v. Nationsbank,* 324 S.C. 89, 101, 478 S.E.2d 45, 51 (1996). The record clearly reveals Franklin's mortgage was for a sum certain and payable on August 1, 2000. These facts alone, irrespective of any interest rate chargeable prior to the demand date, entitle Franklin to prejudgment interest at the legal rate. Therefore, we find the master did not err in awarding prejudgment interest to Franklin.

### III. Order Of Payment

■ Because we find BB & T has a first lien priority, its $100,000 mortgage and all associated costs and fees, including attorney fees according to the terms of the mortgage agreement, must be paid first from the proceeds of the property's sale. *See Dedes v. Strickland,* 307 S.C. 155, 160, 414 S.E.2d 134, 137 (1992) ("[W]here there is a contract providing for such, the amount of attorneys fees is governed by the contract."). Following the satisfaction of BB & T's mortgage, fees and costs, Franklin is entitled to any surplus funds sufficient to satisfy his mortgage, fees, and associated costs.

### CONCLUSION

We remand this case to the master for recalculation of the total sums due BB & T and Franklin. Furthermore, we direct both BB & T's and Franklin's mortgages be foreclosed in accordance with this opinion. For the foregoing reasons, the master's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[2]

HEARN, C.J., and HUFF, J., concurring.

___

2. Because oral argument would not aid the Court in resolving any issue on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.