584 S.E.2d 438

**James R. SWINDLER, Marshalene S. Frady, and Rebecca Spears, Respondents,**

v.

**Nancy W. SWINDLER and Commercial Credit Corporation, Defendants,**

**Of whom Nancy W. SWINDLER is Appellant.**

No. 3658.

Court of Appeals of South Carolina.

Heard March 11, 2003.

Decided July 7, 2003.

Rehearing Denied Aug. 21, 2003.

David Randolph Whitt, Henry Guyton Murrel, and Pearce W. Fleming, all of Columbia, for Respondents.

Howard S. Sheftman and J. Alton Bivens, both of Columbia, for Appellant.

HOWARD, J.:

In this foreclosure action, we are asked to determine whether a promissory note secured by a real estate mortgage is a negotiable instrument governed by Article 3 of the South Carolina Uniform Commercial Code ("UCC"). James R. Swindler, Marshalene S. Frady, and Rebecca Spears (collectively, "the Swindler Family") brought this action against their sister-in-law, Nancy Swindler ("Nancy"), to foreclose a mortgage encumbering a 54.5–acre tract of land Nancy purchased from their mother, Margaret Swindler ("Margaret"). Nancy asserted various defenses, including that Margaret had renounced the underlying debt by giving Nancy possession of the original Note. The master-in-equity concluded Article 3 of the UCC did not govern the transaction, and therefore, the defense of renunciation under South Carolina Code Annotated section 36–3–605(1) (1976) [1] was not applicable. The master entered a judgment of foreclosure and sale in favor of the Swindler Family. Nancy appeals. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Margaret had four children—the three Respondents to whom we refer as the Swindler Family and a son, Timothy. Timothy was married to Nancy. During Timothy's lifetime, Margaret conveyed a 54.5–acre tract of land to Nancy to be Nancy and Timothy's residence. In return, Nancy executed a

---

1. Much of the statutory authority governing notes and security interests has been amended since the inception of this litigation. However, in deciding this case we must apply "the law in effect at the time the cause of action accrued [because it] controls the parties' legal relationships and rights." *Stephens v. Draffin*, 327 S.C. 1, 5, 488 S.E.2d 307, 309 (1997).

note, agreeing to pay Margaret $200,000.00 for the property. The Note was secured by a mortgage covering the property.

After both Margaret and Timothy died, James Swindler attempted to transfer a one-quarter interest in the Note and Mortgage to each member of the Swindler Family in his capacity as personal representative of Margaret's estate. The Swindler Family then demanded payment of $150,000.00 from Nancy, representing three-quarters of the amount due on the Note, and brought this foreclosure action.

Nancy asserted as a defense that Margaret had renounced the debt by delivering the original Note to her. In support of her position, Nancy cited section 36–3–605(1), which states in applicable part: "The holder of an instrument may even without consideration discharge any party ... (b) by renouncing his rights ... *by surrender of the instrument to be discharged.*" (Emphasis added). During the trial, only Nancy testified and presented witnesses. Nancy established the Note and Mortgage had been sent to Margaret before execution, and Margaret delivered the original Note and Mortgage to Nancy and Timothy before her death. The Swindler Family admitted Nancy has possession of the original Note and Mortgage.

The master declined to apply section 36–3–605. He construed South Carolina Code Annotated section 36–3–103(2) (1976),[2] governing negotiable instruments under Article 3, to superimpose the limitations of Article 9 onto Article 3. Because Article 9 of the UCC, specifically South Carolina Code Annotated section 36–9–104(j) (Supp.2000), excludes from its application "the creation or transfer of an interest in or lien on real estate[,]" the master ruled Article 3 did not apply to notes secured by mortgages on real estate. He also found no evidence existed to prove how Nancy obtained the original Note and Mortgage or to establish Margaret intended Nancy's obligation to be discharged. Therefore, he ruled the Swindler Family was a proper holder of the Note and $150,000.00 was due. The master entered a judgment of foreclosure and sale in favor of the Swindler Family. Nancy filed a motion to alter

---

**2.** Section 36–3–103(2) provides: "The provisions of this chapter are subject to the provisions of the chapter on bank deposits and collections (Chapter 4) and secured transactions (Chapter 9)."

or amend the judgment, which the master denied. Nancy appeals.

## STANDARD OF REVIEW

"An action to foreclose a real estate mortgage is an action in equity." *BB & T of South Carolina v. Kidwell,* 350 S.C. 382, 387, 565 S.E.2d 316, 319 (Ct.App.2002). On appeal from an action in equity, this Court may "find facts in accordance with its views of the preponderance of the evidence." *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). Furthermore, this Court is not bound by the trial court's legal determinations. *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 718–19 (2000).

## DISCUSSION

Among the issues raised on appeal, Nancy asserts the master erred by ruling Article 3 of the UCC does not govern a note secured by a mortgage on real property. Furthermore, pursuant to section 36–3–605(1), Nancy argues a presumption arose that Margaret renounced the debt because Margaret delivered the Note to Nancy prior to her death, and the Swindler family failed to present any evidence to overcome the presumption. We agree with both assertions and reverse the master's order.

### I. Applicability of Article 3

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hawkins v. Bruno Yacht Sales, Inc.,* 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003). Moreover, "[w]here the terms of the statute are clear, [this Court] must apply those terms according to their literal meaning." *Brown v. S.C. Dep't of Health & Envtl. Control,* 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002); *see also Rowe v. Hyatt,* 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996) (holding when "interpreting a statute, words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation").

Article 3 applies to negotiable instruments. Thus, as an initial matter, we must determine whether the Note is a

negotiable instrument and a "note" as defined by Article 3 of the UCC. If not, then Article 3 would clearly not apply and our inquiry would end.

South Carolina Code Annotated section 36–3–104 (1976) provides:

(1) Any writing to be a negotiable instrument within this chapter must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

(5) A writing which complies with the requirements of this section is

. . .

(d) a "note" if it is a promise other than a certificate of deposit.

Clearly each of these requirements is met in this case. Furthermore, neither party asserts the instrument fails to satisfy the above criteria.

Having determined the Note is a negotiable instrument and a "note," we next consider the master's conclusion Article 3 does not apply to a note secured by a real estate mortgage. In this regard, it appears the master misread section 36–3–103(2). This section states "[t]he provisions of this chapter are subject to the provisions of the chapter on ... secured transactions [ (Article 9)]." The master construed this statute to act as a limitation on the application of Article 3 so as to exclude from coverage a note secured by a real estate mortgage. He bolstered his decision by noting "the existence of S.C.Code § 29–3–330, which expressly provides methods for satisfying a mortgage of real estate."

We conclude the master erred. No provision in Article 3 exists which distinguishes an unsecured note from a note secured by a real estate mortgage. Moreover, no provision in Article 9 excludes a note secured by a real estate mortgage

from the application of Article 3. The negotiability of a note is not altered by the execution of a related real estate mortgage. *See* S.C.Code Ann. § 36–3–119(2) (1976) (stating a note remains subject to the terms of Article 3 irrespective of the occurrence of any other transaction); *cf. Int'l Minerals & Chem. Corp. v. Matthews,* 71 N.C.App. 209, 321 S.E.2d 545, 547 (1984) (holding "incorporating into a note the liens that secure its payment" does not affect the applicability of Article 3).

The Official Comment to section 36–3–119(2) states:

5. Subsection (2) rejects decisions which have carried the rule that contemporaneous writings must be read together to the length of holding that a clause in a mortgage affecting a note destroyed the negotiability of the note. The negotiability of an instrument is always to be determined by what appears on the *face of the instrument alone* .... [If the note] merely refers to a separate agreement or states that it arises out of such an agreement, it is negotiable.

(Emphasis added). Furthermore, any "contemporaneous writing[,] e.g., a chattel mortgage given to *secure* a negotiable note[,] is not read into the note to destroy its negotiability." *Id.* reporter's cmt (emphasis added); *cf. Burch v. Ashburn,* 295 S.C. 274, 278, 368 S.E.2d 82, 84 (Ct.App.1988) ("[T]he contemporaneous execution of the two writings does not affect the note, which is enforceable according to its tenor without regard to any breach of the" other agreement.). Thus, even when executed simultaneously with a mortgage, a note remains subject to the provisions of Article 3. *See Northwestern Bank v. Neal,* 271 S.C. 544, 546–47, 248 S.E.2d 585, 586 (1978).

Furthermore, we do not agree with the master's construction of sections 36–3–103(2) and 36–9–104(j). We conclude these provisions are unambiguous and clearly state Article 3 governs a note even when secured by a mortgage on real property.

First, the master misquoted section 36–3–103(2) to state Article 3 was subject to the "limitations" of Article 9. However, this section states "[t]he provisions of this chapter are subject to the *provisions* of the chapter on ... secured transactions [Article 9]" not "limitations of Article 9" as stated in the master's order. (Emphasis added). Article 9 provides

it does not apply "to the creation or transfer of an interest in or lien on real estate." S.C.Code Ann. § 36–9–104(j). However, nothing in Article 9 provides a limitation on the applicability of Article 3 to notes secured by mortgages on real estate.

Moreover, the Official Comment to section 36–3–103 explains the interaction between Articles 3 and 9.

> 2. Instruments which fall within the scope of this Article may also be subject to other Articles of the [UCC]. Many items in the course of bank collection will of course be negotiable instruments, and the same may be true of collateral pledged as security for a debt. In such cases this Article, which is general, is, in case of *conflicting provisions*, subject to the Article[] which deal[s] specifically with the type of transaction or instrument involved: ... Article 9 (Secured Transactions). In the case of a *negotiable instrument* which is subject to ... Article 9 because it is collateral, the provisions of [Article 3] *continue to be applicable except insofar as there may be conflicting provisions* ....

(Emphasis added).

Reading sections 36–3–103(2) and 36–9–104(j) in conjunction, especially in light of the Official Comment to section 36–3–103, we conclude Article 3 controls the Note. This interpretation reflects the clear intent of the UCC; Article 9 controls over Article 3 only where some conflict between the applicable provisions of Articles 3 and 9 exists. Here, no conflict exists because Article 9 does not address the underlying indebtedness of a security interest. *See Midfirst Bank, SSB v. C.W. Haynes & Co., Inc.*, 893 F.Supp. 1304, 1312–13 (D.S.C.1994) (interpreting South Carolina law, holding the inapplicability of Article 9 to a negotiable instrument does not affect the application of Article 3); *First Valley Bank v. First Sav. & Loan Ass'n of Cent. Indiana*, 412 N.E.2d 1237, 1240–41 (Ind. Ct.App.1980) (rejecting the argument "that mortgage notes, which are secured by liens on real estate, lie entirely outside the coverage of the [UCC]" and adopting the view that Article 3 applies "to promissory notes secured by mortgages").

We also conclude the master's reliance on South Carolina Code Annotated section 29–3–330 (1991), governing the satisfaction of real estate mortgages, is misplaced. In his order, the master noted section 29–3–330 requires written satisfac-

tion of a mortgage. The master found this language supported his ruling that renunciation of the debt under Article 3 of the UCC was not intended by our Legislature to apply to a note secured by a real estate mortgage.

South Carolina Code Annotated section 29–3–310 (Supp. 2000) states a mortgagee "who has received ... *satisfaction* ... *of his debts* ... secured by a mortgage on real estate shall ... enter satisfaction ... on the mortgage." (Emphasis added). This section clearly contemplates the satisfaction of a debt, the note, and the satisfaction of the security interest for that debt, the mortgage, as separate actions. Pursuant to this section, the debtor must first satisfy the note, and then the mortgagee must enter satisfaction of the mortgage. Thus, the master's conclusion that section 29–3–330 supports his ruling with respect to Articles 3 and 9 is incorrect.

In this case, when Nancy made the Note, she executed a document subject to the provisions of Article 3, not Article 9. Her subsequent or simultaneous creation of the Mortgage did nothing to change the nature of the Note itself. Thus, the Note remained subject to the provisions of Article 3.

## II. Renunciation of Note

Having determined the Note is a negotiable instrument governed by Article 3 of the UCC, we next address Nancy's argument that Margaret renounced the debt by giving Nancy possession of the original Note. We find Nancy's possession of the original Note gave rise to the presumption that Margaret renounced the debt prior to her death. Moreover, the Swindler Family failed to produce any evidence to rebut this presumption. Thus, we conclude Nancy's debt was discharged.

As noted above, section 36–3–605(1) provides: "The holder of an instrument may even without consideration discharge any party ... (b) by renouncing his rights ... *by surrender of the instrument to be discharged*." (Emphasis added). "When the obligor has possession [of the instrument], the party suing on the instrument has to *overcome a presumption* that the instrument was *discharged*." 2 James J. White & Robert S. Summer, *Uniform Commercial Code* § 16–13 at 134–35 (4th ed.1995) (emphasis added); *see also Winkel v.*

*Erpelding,* 526 N.W.2d 316, 319 (Iowa 1995) ("The debtor's possession of the instrument creates a rebuttable presumption of discharge."); *Columbia Sav. v. Zelinger,* 794 P.2d 231, 234 (Colo.1990) ("Possession of the instrument by the debtor . . . is normally sufficient to create a rebuttable presumption of discharge."). Therefore, only if the obligee can show the obligor is in possession of the instrument " 'unintentionally, or under a mistake, or without [] authority' " can the presumption be overcome and the discharge proven to be without effect. *Peoples Bank of S.C. v. Robinson,* 272 S.C. 155, 158, 249 S.E.2d 784, 785 (1978) (quoting 11 Am.Jur.2d *Bills & Notes* § 906 (1964)).

■ At trial, Nancy testified that prior to Margaret's death, Margaret delivered the original Note to her. Further, Nancy testified that she was never informed her possession of the Note was by mistake or that she had the Note without authority. Moreover, the Swindler Family admitted Nancy has possession of the original Note and provided no evidence or testimony to indicate Margaret made a mistake by delivering the Note to Nancy or did not intend for Nancy to be discharged from her obligation.

Therefore, we conclude Nancy's testimony is sufficient to create the presumption Margaret intended to discharge Nancy from her obligations under the Note. Because the Swindler Family did not produce any evidence or argument to the contrary, they have failed to rebut this presumption. Thus, we conclude Nancy's original obligation to pay $200,000.00 for the 54.5–acret tract of land is discharged.

### CONCLUSION [3]

For the foregoing reasons, the master's order finding Article 3 of the UCC inapplicable to a note secured by a mortgage on real property and ruling Margaret did not renounce her rights in the Note by surrendering it to Nancy is reversed and

---

3. Because of our holdings with respect to the applicability of Article 3, and the Note's renunciation, we need not address Nancy's other issues on appeal.

this case is remanded with instructions to enter satisfaction of the mortgage in accordance with section 29–3–310.

**REVERSED and REMANDED.**

CURETON and STILWELL, JJ., concur.