640 S.E.2d 887

Ex parte Bruce JOHNSON, Appellant,

In re Bank of America, N.A., Respondent,

v.

Schuyler L. Moore and Yvonne R. Moore, as Trustees for the Moore Family Trust; Schuyler L. Moore and Yvonne R. Moore; Lyn–Rich Contracting Company, Inc.; Alice Guillemet; Scott Moore; Raymond Guillemet; Gordon Rockwell; Barbara Moore; Leslie Guillemet; Shawn G. Guillemet; Brandy G. Guillemet; Andre S. Moore; and Deanna M. Moore, Defendants,

Of whom Schuyler L. Moore and Yvonne R. Moore, as Trustees for the Moore Family Trust; Schuyler L. Moore and Yvonne R. Moore; Lyn–Rich Contracting Company, Inc. are the Respondents.

No. 4165.

Court of Appeals of South Carolina.

Submitted Sept. 1, 2006.

Decided Oct. 16, 2006.

Withdrawn, Substituted and Refiled Dec. 18, 2006.

Rehearing Denied Dec. 18, 2006.

Tobias G. Ward, Jr. and J. Derrick Jackson, both of Columbia, for Appellant.

Frederick A. Gertz, John M. A'Hern and Robert F. Anderson, all of Columbia, George S. Nicholson, Jr. and Patrick J. Frawley, both of Lexington, James W. Sheedy and Susan E. Driscoll, both of Rock Hill, for Respondents.

KITTREDGE, J.:

In this foreclosure action, the property was sold, by way of court order, subject to the successful bidder paying the past due property taxes and assessments. The sale resulted in surplus funds. Following the sale, Bruce Johnson, the successful bidder, sought to defeat the previously unchallenged court order and avoid responsibility for the taxes and assessments. Johnson argued to the Master, and now to us, that section 12–49–60 of the South Carolina Code (Supp.2005) requires the payment of the taxes and assessments from the surplus funds. The Master followed the order under which all parties and bidders operated and denied Johnson's motion to

satisfy the taxes and assessments from the surplus funds. We affirm.

## I.

Property on Lake Murray in Richland County was encumbered by a first mortgage held by Bank of America, a mechanic's lien held by Lyn–Rich Contracting Company, Inc., and a Richland County tax lien. The tax lien amounted to $229,138.37, approximately one-tenth of the total value of the property. The Moores, the property owners, defaulted under the mortgage for failure to make payments and Bank of America subsequently brought a foreclosure proceeding.

A foreclosure hearing was held on October 27, 2004. Bank of America, Lyn–Rich, and the Moores executed a Consent Order for Foreclosure and Sale. The foreclosure order granted Bank of America judgment against the Moores, including the right to foreclose the mortgage and judicially sell the property. In addition, the foreclosure order specifically provided that "the purchaser [is] required to pay ... for any property taxes or assessment due and payable."

On December 30, 2004, before the scheduled date of the foreclosure sale, the Moores filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. The Bankruptcy Court granted Bank of America relief from the automatic stay to complete the foreclosure in accordance with state law. The property was then advertised pursuant to a Second Notice of Sale on May 14, 21, and 28, 2005.[1]

On July 6, 2005, the property was sold. All prospective bidders had notice of the provision requiring the purchaser to pay the property taxes. Bids were made on this basis.

---

1. We further note that the Second Notice of Sale also addressed payment of taxes, ordering that "the purchaser be required to pay ... for any property taxes which become due and payable after the date of sale[.]" We view this Second Notice of Sale as consistent with the foreclosure order. Even assuming, however, that there is a conflict between the terms of the foreclosure order and Second Notice of Sale, the law is settled that the foreclosure order controls. *See Bonney v. Granger,* 300 S.C. 362, 364, 387 S.E.2d 720, 722 (Ct.App.1990) ("[t]he Notice of Sale does not set forth the conditions of sale, but refers to the prior order authorizing the sale.").

Johnson was the highest bidder. He purchased the property for $2.2 million dollars, which resulted in surplus funds.

Johnson made the required five percent deposit on July 6, and by July 26 had deposited the remainder of the purchase price with the Court, at which point the Master issued a deed. This deed, consistent with the prior order, also noted the property was "subject to assessments, Richland County taxes, existing easements, easements and restrictions of record, and other senior encumbrances." Johnson filed his deed for the property on August 2, 2005.

Following the sale and after delivery of the deed, Johnson sought to defeat the foreclosure order and avoid his obligation to pay the taxes and related assessments. Johnson filed a motion, pursuant to section 12–49–60 of the South Carolina Code (Supp.2005), in an attempt to have the taxes and assessments paid from the surplus proceeds. The Master issued an Order of Disbursement and denied Johnson's motion. This appeal followed.

## II.

The express terms of sale, established in the foreclosure order, set the property for sale subject to outstanding tax liens. The foreclosure order stated the purchaser would be required to pay "any property taxes or assessments due and payable." This was confirmed, without challenge, at the public commencement of the sale on June 6 when all present were reminded that the property would be sold subject to any outstanding property taxes. The Master's deed issued to Johnson on July 26 also stated the property was "subject to assessments, Richland County taxes, existing easements, easements and restrictions of record, and other senior encumbrances." Thus, by the express terms of the sale, Johnson and all other bidders understood that liability for the outstanding tax liens would fall to the successful bidder.

Under these specific facts, we concur with the Master that it would be inequitable to allow Johnson to profit from his late motion. *See BB & T of S.C. v. Kidwell,* 350 S.C. 382, 387, 565 S.E.2d 316, 319 (Ct.App.2002) ("An action to foreclose a real estate mortgage is an action in equity."); *see also QHG of Lake City, Inc. v. McCutcheon,* 360 S.C. 196, 202, 600 S.E.2d

105, 107 (Ct.App.2004) (stating that while an appellate court is free to take its own view of the preponderance of the evidence in an action in equity, the court is not required to disregard the judge's findings).

At every stage of the proceedings, all interested parties were made aware that the property was being sold subject to tax liens. As noted, the foreclosure order specifically provided that "the purchaser [is] required to pay ... for any property taxes or assessment due and payable." The Second Notice of Sale followed suit by placing responsibility for the taxes and assessments on the purchaser. The deed issued by the Master, which Johnson filed ten days prior to filing his motion under section 12–49–60, stated the property was "subject to assessments, Richland County taxes, existing easements, easements and restrictions of record, and other senior encumbrances."

To rewrite the terms of sale *after the sale* would be patently inequitable, especially to the other bidders who made bids knowing that a successful bid would result in the additional responsibility of approximately $230,000 in past due taxes. Johnson's post sale motion pursuant to section 12–49–60 came too late. By that time, Johnson had participated in the sale under the terms of the foreclosure order, failed to make any motion prior to sale, and filed a deed which further acknowledged the terms of sale.

Assuming Johnson may have invoked section 12–49–60 prior to the sale, equity must intervene when Johnson remained silent while all bidders made bids based on the additional responsibility for the payment of the substantial past due taxes and assessments. Equity will not permit such an unwarranted windfall to Johnson under these circumstances. *See generally Collins v. Sigmon,* 299 S.C. 464, 468, 385 S.E.2d 835, 837–38 (1989) (applying the ancient maxim "equity aids the vigilant and diligent" and not those who sleep on their rights).

Furthermore, it is the long-established policy in South Carolina that "[t]he courts should be particularly jealous of the integrity of judicial sales." *In re Wilson,* 141 S.C. 60, 63, 139 S.E. 171, 172 (1927). "[A]ny conduct on the part of those actively engaged in the selling or bidding [at a judicial sale]

that tends to prevent a fair, free, open sale, or stifle or suppress free competition among bidders, is contrary to public policy[.]" *Ex parte Keller,* 185 S.C. 283, 291, 194 S.E. 15, 19 (1937). The filing of a motion under section 12–49–60 after the sale is contrary to such public policy under the circumstances here. Where all parties and potential bidders in a foreclosure sale have notice of, and do not challenge, a valid court order assigning responsibility for outstanding taxes to the successful bidder as a condition of the purchase, the successful bidder may not thereafter gain a windfall by a tardy attempt to invoke section 12–49–60.

## III.

We further disagree with Johnson's argument that disbursement of sale proceeds must always track section 12–49–60. We find that the payment of taxes and related assessments from the sale proceeds under section 12–49–60 is not mandatory. Section 12–49–60 of the South Carolina Code (Supp.2005) provides:

> When any real estate shall be sold under any writ, order or proceeding in any court, the court shall, on motion of any person interested in such real estate or in the purchase or proceeds of the sale thereof, order all taxes, assessments and penalties charged thereon to be paid out of the proceeds of such sale as a lien prior to all others.

The statute is not self-executing—it requires a "motion of any interested person ... [w]hen any real estate shall be sold." The statute does not take effect unless a timely motion is made by an interested party. Just as section 12–49–60 protects and assigns priority to a tax lien, the consent order of foreclosure in this case protected the tax lien of Richland County. Thus, the policy underlying section 12–49–60 is similarly achieved by giving efficacy to the foreclosure order before us today. The foreclosure order here is in accord with well-established South Carolina law—"real property subject to taxes cannot be sold in foreclosure free of the existing tax liens, unless provision for payment is made and they are paid." *Trustees of Wofford College v. Burnett,* 209 S.C. 92, 107, 39 S.E.2d 155, 161 (1946). This was the law of the land in 1881, at the time the predecessor to section 12–49–60 was originally

passed. *See Smith v. Gatewood,* 3 S.C. 333, 334 (1872) (finding purchaser of real estate purchased subject to tax lien when no provision provided otherwise and taxing authority not party to sale of property); *See also* 47 Am.Jur.2d Judicial Sales § 160 (2006) ("The rule that, absent an express stipulation to the contrary in the terms of sale, a purchaser takes the property subject to valid liens ordinarily applies to liens for taxes and assessments accruing prior to the confirmation of the sale or arising after the completion of the sale.").

Johnson argues *Truesdale v. Bellinger,* 172 S.C. 80, 172 S.E. 784 (1934), mandates a contrary result. We disagree. In *Truesdale,* property was sold by the probate court in aid of assets. *Id.* There, the probate court notified all bidders before the sale that all debts of the estate would be paid from the proceeds. *Id.* at 85, 172 S.E. at 786. When the taxes due on the land were not paid from the proceeds, the successful bidder brought an action against the probate judge. *Id.* Although our supreme court ultimately ruled the probate judge made an error of law in his judicial capacity that was not actionable, the court noted that a motion for payment of taxes from the proceeds of a sale (pursuant to the predecessor to section 12–49–60) may be made after the sale but before the disbursement of the proceeds. *Id.* at 87, 172 S.E. at 787. Unlike in the instant case, however, payment of the taxes due in *Truesdale* out of the proceeds from the sale would not have changed the terms of the sale upon which the bidders had relied in making their bids. We thus find *Truesdale* distinguishable, for application of section 12–49–60 here after the sale, would alter the terms of the sale upon which all bidders relied in making their bids.

## IV.

The judgment of the Master is

**AFFIRMED.**

ANDERSON and SHORT, JJ., concur.