THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Mark D. Watt, individually and as an agent for Diane M. Watt and William J. Watt, Respondent
 v.
 Charlie Galloways Furniture Shop, Inc., d/b/a Furniture Depot Design Center and Charlie M. Galloway, Jr., Appellants.
 
 
 

Appeal from Anderson County
James D. Jolly, Jr., Special Referee 

Unpublished Opinion No. 2007-UP-072
Submitted February 1, 2007  Filed February 12, 2007    

AFFIRMED

 
 
 
 William E. Phillips,  of Anderson, for Appellants.
 Richard E. Thompson, Jr., of Anderson, for Respondent.
 
 
 

PER CURIAM:  Charlie Galloways Furniture Shop, Inc., d/b/a Furniture Depot Design Center and Charlie M. Galloway, Jr., (collectively Galloway) appeal the special referees finding that J. Jackie Watt (decedent) owned forty percent of Galloways Furniture Shop, Inc.  Galloway also contends the special referee erred in finding the action was not filed beyond the statute of limitations.  We affirm.[1]  
FACTS
On March 2, 1989, Galloway and decedent jointly purchased property on which Galloways Furniture Shop was operated.  A disagreement arose over the operation of the business and, on February 7, 1996, decedent filed suit against Galloway alleging he was a forty percent shareholder in the corporation.  Decedent alleged the parties could no longer work together and asked for the corporation to be dissolved.  Galloway filed an Answer and Counterclaim alleging decedent was a thirty-nine percent shareholder.  Decedent maintained he was a forty percent shareholder, and thereafter, Galloway filed an Amended Answer and Counterclaim alleging decedent did not own any shares of the corporation because he failed to provide adequate consideration.  Decedent filed a reply denying the allegations and asking that Galloways counterclaim be barred by the statute of limitations.  On January 16, 1998, the case was referred to a special referee.  
On September 13, 1998, decedent passed away.  An estate was opened and it was determined that his heirs were his three children:  Mark D. Watt, Diane M. Watt, and William J. Watt, of whom Mark Watt was appointed the personal representative.  After the death of his father, Mark Watt approached Galloway concerning his fathers share of the corporation.  This was followed by a second visit, at which time Mark Watt asked Galloway to value the corporation so that he could determine the value of his late fathers share.    According to Mark Watt, Galloway gave a figure of $250,000 but stated that they shouldnt record all of that figure because [decedent] only owned thirty-nine percent of it.   In December 2001, Mark Watt had another conversation with Galloway concerning the probate of his fathers estate.  During this conversation, Galloway told Mark Watt that decedent did not own any interest in the corporation, and as such, there would be no division.  At this time, Mark Watt became concerned and consulted an attorney.   
On October 18, 2002, Mark Watt, individually and as an agent for the estate, filed a lawsuit alleging decedent was a forty percent shareholder of the corporation and asking for judicial dissolution of the corporation, a court ordered sale of shares, and a partition of the property.  In his Second Amended Answer and Counterclaim, Galloway alleged decedent was merely an employee of the corporation and did not own any shares.  Galloway further alleged that even if decedent did own shares, the complaint should be dismissed as filed beyond the applicable statute of limitations.  A hearing was held September 27-29, 2005, at which the special referee found decedent was a forty percent shareholder in the corporation and the action was not filed beyond the applicable statute of limitations.  This appeal followed.  
STANDARD OF REVIEW
A corporate dissolution, under S.C. Code Ann. § 33-14-300 et seq., is an equitable relief.  The provisions of S.C. Code Ann. § 33-14-310(d), allowing for appropriate alternative relief including a buyout of shareholders by other shareholders or the corporation, are also equitable.  Kiriakides v. Atlas Food Sys. & Servs., Inc., 338 S.C. 572, 581, 527 S.E.2d 371, 375-76 (Ct. App. 2000) affd as modified, 343 S.C. 587, 541 S.E.2d 257 (2001) (citations omitted).  Our scope of review for a case heard by a Master-in-Equity or special referee who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury.  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1990) (citations omitted).  In an equity action, the appellate court may review the evidence to determine the facts in accordance with its own view of the evidence.  Florence County Sch. Dist. #2 v. Interkal, Inc., 348 S.C. 446, 450, 559 S.E.2d 866, 868 (Ct. App. 2002).  However, the appellate court does not disregard the findings of the special referee who was in a better position to evaluate the credibility of the witnesses.  Tiger, at 237, 391 S.E.2d at 543.  Furthermore, the appellate court is not bound by the trial courts legal determinations.   Swindler v. Swindler, 355 S.C. 245, 249, 584 S.E.2d 438, 440 (Ct. App. 2003) (citing Ion, L.L.C.  v. Town of Mt. Pleasant, 338 S.C. 406, 411, 526 S.E.2d 716, 718-19 (2000)).  
LAW/ANALYSIS
I.  Ownership
Galloway contends the special referee erred in finding the decedent owned forty percent of the corporation.  He contends the evidence established that the decedent never paid for any shares of stock, as requested by Galloway.  We disagree.  
The evidence presented at trial supports the special referees findings.  One of the witnesses, Patricia Sparks, a bookkeeper for Price Bookkeeping and Tax Service, testified she had prepared tax returns for Galloway Furniture for a number of years.  At one point, Galloway and the decedent brought papers to her office and told her that the corporate papers were to be changed so that the decedent would have a share in the corporation.  She did not remember the exact percentages each were to retain but did remember that Galloway was to retain a greater percentage than decedent.  Galloway told her to issue shares in both Galloways and the decedents names.  A copy of the stock certificates with both Galloway and the decedents names was entered into evidence.  
As to the question of whether the decedent failed to pay for his shares, Sparks testimony at a previous deposition was that it was her understanding the decedent was not required to pay for his shares of stock because they were issued to him in return for the work he did for the business and for his help in building the business.  She said this understanding was based on what both the decedent and Galloway had told her.  However, at trial Sparks testified that at some point Galloway told her that the decedent was supposed to have paid for the shares but never did.    
The special referee also based its decision on the testimony of Kirk Messick, the certified public accountant that did all the accounting for Galloway Furniture after Sparks.  Messick testified that in examining the books and records presented to him when he began working for Galloway, he noticed that the decedent and his social security number were both listed on the previous years tax return under Compensation of Officers.  Messick further testified that at the time he took over the bookkeeping from Price Accounting Service and Sparks, the records showed that the decedent was a forty percent owner of the business.  
The only testimony presented at trial to show the decedent did not own shares of Galloway Furniture was that of Galloway himself and his repeated assertions that decedent did not pay for his shares.  However, the testimony of the other witnesses clearly supported the special referees finding that decedent owned forty percent of the corporation and that the consideration for those shares was his work for the corporation.  Furthermore, by this courts calculation, the number of shares listed on the stock certificates in the record showed decedent owned forty percent of the corporation.[2]    Given the special referee was in a better position to judge the creditability of the witnesses testimony and the ample evidence in the record, we defer to his finding that decedent owned forty percent of the corporation.  See Tiger, at 237, 391 S.E.2d at 543.  
II.  Statute of Limitations  
Galloway contends the special referee erred in failing to dismiss the causes of action based on the applicable statute of limitations.  Specifically, Galloway contends the suit is untimely because the heirs should have known about the suit in September 1998, when their father passed away, yet the suit was not filed until 2002, four years later.  We disagree.  
Both the 1998 action filed by the decedent and the 2002 action filed by the heirs maintained the same causes of action: judicial dissolution of the corporation and court-ordered sale of shares.  The 1998 action was never dismissed, but was ended on January 16, 1998 pursuant to a consent order appointing a special referee.  Galloway never moved to have the 1998 case dismissed.  
Section 15-3-530(9) of the South Carolina Code (Supp. 2005) provides a statute of limitations of three years in cases involving an action against the directors or stockholders of a corporation to enforce a liability.  This cause of action is not considered to have accrued until the date of discovery by the aggrieved parties of the facts upon which the liability is created.  See S.C. Code Ann. § 15-3-530(9) (Supp. 2005).  In the instant case, Mark Watt did not discover that his fathers ownership in the corporation was at question until a discussion with Galloway in November 2001.  Until this time, Mark Watts previous conversations with Galloway indicated the decedent had at least some ownership in the corporation.  After Mark Watt realized his fathers shares were in dispute, he contacted a lawyer and filed the present action on October 18, 2002, well within the three year statute of limitations period.  Accordingly, the special referee was correct in finding the instant action was filed within the applicable statute of limitations. 
 CONCLUSION
For the reasons stated herein, the special referees decision is 
AFFIRMED. 
ANDERSON, KITTREDGE, and SHORT, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] The number of shares shown on the stock certificates as owned by Galloway is 58,137.  The number of shares shown on the stock certificates to be owned by the deceased is 38,758.  As Sparks testified there were only two stock certificates issued for the corporation, the total shares issued was 96,895.  Exactly forty percent of the total number of shares issued is 38,758, the number of shares shown to be owned by the decedent.