## 9612

### BANK OF WILLISTON v. ALDERMAN *ET AL.*

#### (91 S. E. 296.)

1. JURY—RIGHT TO TRIAL BY JURY—ACTION FOR RECOVERY OF MONEY ONLY.—Where plaintiff bank mistook certificate number of a $15 draft for the amount and paid defendant $528.20, and, upon his refusal to surrender surplus, brought suit, alleging mistake and fraud and asking injunction and recovery, this was an equity action, and Code Civ. Proc., sec. 312, providing trial by jury in action for "recovery of money only," did not apply.

2. BANKS AND BANKING—OVERPAYMENT OF DRAFT—DUTY OF PAYEE.—Where plaintiff bank mistook the certificate number of a draft for the amount and overpaid defendant, it was the latter's duty to give notice of the mistake as soon as he discovered it, and refusal to return it after demand was a conversion and fraud upon the bank.

3. TRUSTS—"CONSTRUCTIVE TRUST"—NATURE OF.—A "constructive trust" arises whenever one party has obtained money which does not equitably belong to him, and it is not essential that there be an actual fiduciary relation existing, or that there be actual fraud.

Before RICE, J., Aiken, August, 1916.   Appeal dismissed.

Action by the Bank of Williston against Owen Alderman and another.   Defendants appeal from an order of reference granted upon plaintiff's motion, on the ground that he is entitled to a jury trial.

*Messrs. Croft & Croft,* for appellants, cite: *As to character of action:* 100 S. C. 158, 159; Minor (Ala.) 75; 4 Harr. 170; 28 Ga. 242; 46 Am. Dec. 655; 6 Am. Dec. 86; 45 N. H. 482; 55 Am. St. Rep. 878; 27 Cyc. 866; Kerr Fraud 407 to 409; 2 Pom. Eq. Juris. 839; Story Eq. Juris. 105; 20 S. C. 489; Bail. Eq. 495; Dudley 261; 2 Bay 80; 22 Cyc. 766.   *Deceit:* 9 Rich. 300.   *Right to jury trial:* 20 S. C. 486; 27 Cyc. 885.

FOOTNOTE.—As to right of bank to recover money paid out by mistake, see note in 1 A. & E. Ann. Cas. 632.

*Messrs. Hendersons,* for respondent, cite: *As to injunction:* 84 S. C. 112; Bailey Eq. 495; 2 Pom. Eq. Juris. 856; 102 S. C. 308. *Constructive trusts:* 3 Pom. Eq. Juris. 1047, 1051; 39 Cyc. 169, 170, 172; 23 S. C. 686; 56 S. C. 273; 23 S. C. 148. *Mode of trial:* 69 S. C. 196; 43 S. C. 242, 243. *Motion for issue to jury:* 73 S. C. 507.

February 10, 1917.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

This is an appeal from an order of reference, on the ground that the appellant was entitled to a trial by jury.

The second paragraph of the complaint is as follows:

"That on the 24th day of July, 1915, the defendant, Owen Alderman, presented to the plaintiff, at its banking house, a certain check or draft, or warrant, drawn by the superintendent of the Atlantic Coast Line Relief Department, upon the treasurer of the Atlantic Coast Line Railroad Company, at Wilmington, N. C., in favor of Ina E. Alderman, for the sum of fifteen dollars ($15.00). That said draft bore certificate number 52820 and had been duly indorsed by Ina E. Alderman and thereby assigned and transferred unto the bearer thereof, who was the said defendant, Owen Alderman. That upon the presentation of said draft the plaintiff, acting through its cashier, through error and mistake, mistook the certificate number 52820 for the amount of the draft, and considered that the said draft was for the sum of five hundred and twenty-eight and 20-100 dollars ($528.20), and forthwith and immediately paid in good and lawful currency of the United States of America, unto Owen Alderman, for said draft, the sum of five hundred and twenty-eight and 20-100 dollars ($528.20), instead of paying him the amount of the draft, which was fifteen dollars ($15.00)."

The complaint likewise alleges that the defendant, Alderman, although a demand was made upon him, refused to return said fund, well knowing that it was not his property, and thereby committed a fraud upon the rights of the plaintiff; that $290 of the fund so received was deposited by the defendant, Alderman, in the First National Bank of Aiken, and that he has converted the other portion of the fund to his own use; that the defendant, Alderman, is insolvent, and it is necessary for the protection of the plaintiff's rights that he be enjoined, *pendente lite,* from disposing of so much of the fund as is now on deposit in the First National Bank of Aiken.

The defendant denied each and every allegation of the complaint, except those specifically admitted. He admitted the corporate existence of the banks, and so much of paragraph 2 as alleges that on or about the 24th of July, 1915, he presented to the plaintiff a certain check, draft or warrant of the Atlantic Coast Line Relief Department for the sum of $15; but that he does not know the number of the certificate, as alleged in the complaint. He further admits that the said draft was assigned to him by the original payee, and that he was the lawful owner thereof.

The defendant, Alderman, made a motion to dissolve the temporary order of injunction, which had been granted. The motion was refused, and there is no appeal from that order.

The plaintiff made a motion for an order of reference, which was granted, and Alderman appealed, on the ground that he was entitled to a trial by jury.

Section 312 of the Code provides that an issue of fact for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived.

In the case of *Ex parte Landrum,* 69 S. C. 136, 48 S. E. 47, there was a proceeding in the probate Court to fix the amount of the fees to which the attorneys representing the

executor were entitled, and to determine the fund out of
which they should be paid. The Supreme Court said:

"This renders it necessary to invoke the aid of the Court
in the exercise of its chancery powers. The facts are, there-
fore, reviewable by this Court."

That case is cited with approval in *Mobley Co.* v *McLucas,*
99 S. C. 99, 82 S. E. 986.

If the plaintiff had based his action simply upon the ground
of mistake, the defendant would have been entitled to a trial
by jury, as that would have been an action for the recovery
of money only. But there are other allegations appropriate
to an action seeking the aid of the Court in the exercise of its
chancery powers. There are allegations to the effect that
the defendant, Alderman, is attempting to deprive the plain-
tiff of its rights by fraudulently converting the fund to his
own use.

The appellant's attorneys cite the case of *Campbell* v.
*Kinloch,* 43 S. C. L. (9 Rich.) 300, to sustain the proposi-
tion that:

"Mere silence as to a material fact is not necessarily, as
matter of law, equivalent to a false representation, and,
therefore, in the absence of any duty to·speak, it is not, of
itself, ground for an action of deceit."

The facts in that case were as follows: The owner of a
certain negro was about to offer him for sale, and her agent
certified in writing that the negro was an excellent bread
and cake baker; that he was sold to change the investment,
and that his lowest price was $800. The plaintiff therein
became the purchaser. ·The negro was unsound at the time,
within the knowledge of the agent, and died shortly after-
wards. It was held that the omission to state in the certifi-
cate that the negro was sound was not equivalent to a sug-
gestion of his soundness; and, before the plaintiff could
recover, it must be made to appear that the circumstances
rendered it obligatory on the agent to disclose the unsound-
ness, known to him at the time. The Court said:

"Of these propositions, there is manifest error in that one which makes the suppression of truth always equivalent to the suggestion of falsehood. Falsehood suggested, by which a plaintiff is misled and hurt, gives no action unless it be accompanied by moral wrong. * * * It is always so accompanied, when it is known at the time by him who utters it to be false. * * * But omission to state a known truth is not usually wilful concealment, and, even when it is, is often both prudent and praiseworthy. To make the suppression of truth wrong, it must be not only wilful, but immoral. It is only when duty requires the utterance of truth that its suppression is a moral wrong. If the rights of the inquirer, the relations of the speaker to the subject and parties concerned, time, place, and other circumstances impose the duty of speaking, silence is wrong; and, if such silence is calculated to deceive, * * * it may, without any purpose of selfish gain or malicious mischief, sustain an action for the loss it occasions. In such case it is fraudulent, because it is dishonest and deceives."

The facts in that case and this are materially different. While the facts in that case were not such as to require the agent to make known the unsoundness, it was unquestionably the duty of Alderman to give notice of the mistake as soon as he discovered it, and his failure to give notice of the mistake was a moral wrong. But, in any event, the refusal to return the money, after the demand was made, was a conversion thereof, to his own use, and a fraud upon the rights of the plaintiff, if he knew that it was paid to him by mistake, and that he had absolutely no right, title, or interest in it whatever.

There are other allegations in the complaint, showing the necessity for the Court, in the exercise of its chancery powers, to aid the plaintiff in following the fund, and subjecting it to the plaintiff's claim, on account of the insolvency of Alderman and the inadequacy of the legal remedies.

"By the well-settled doctrines of equity, a constructive trust arises whenever one party has obtained money, which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another, who is beneficially entitled to it; as, for example, when money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust, or violation of fiduciary duty, and the like. It is true that the beneficial owner can often recover the money due to him, by a legal action upon an implied assumpsit, but in many instances a resort to the equitable jurisdiction is proper and even necessary." 3 Pom. Eq. Jur., sec. 1047. "It is not essential for the application of this doctrine that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Whenever one person had wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds." *Id.,* sec. 1051.

"Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, actual or constructive, is their essential element. Actual fraud is not necessary, but such trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done. Such trusts are also known as trusts *ex maleficio,* or *ex delicto,* or involuntary trusts, and their forms and varieties are practically without limit, being raised by Courts of equity, whenever it becomes necessary to prevent a failure of justice." 39 Cyc. 169, 170. See, also, *Knobeloch* v. *Bank,* 43 S. C. 233, 21 S. E. 13.

These authorities show that this is an action on the equity side of the Court.

Appeal dismissed.