THIS OPINION HAS NO 
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY 
 PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals
 
 
 
 
 Walker Investment Management Trust, Respondent,
 
 
 

v.
 
 
 
 
 GrandSouth Bank, B&B Development, LLC, Blasco Builders, Inc., and 
 Carolina First Bank, Defendants,
 of whom Carolina First Bank is, Appellant.
 
 
 

Appeal From Anderson County
  Ellis B. Drew, Jr., Master-In-Equity

Unpublished Opinion No. 2004-UP-606
 Submitted November 1, 2004  Filed December 6, 2004

AFFIRMED

 
 
 
 
 Louis H. Lang, of Columbia, for Appellant.
 Michael F. Mullinax, of Anderson, and Roxy Rae Beagley, of Clemson, 
 for Respondent.
 
 
 

PER CURIAM: Carolina First Bank appeals the trial judges decision that 
 the Walker Investment Management Trusts interest in the subject property was 
 superior to the interest of Carolina First Bank.  We affirm. 
 [1]   
FACTS
David and Donna Walker owned 30.79 acres located at the intersection of Lebanon 
 Road and Liberty Highway in Anderson County, South Carolina.  In September 1999, 
 the Walkers created the Walker Investment Management Trust (Trust), naming their 
 daughters as the trustees.  In October of that same year, the Trust entered 
 into a contract of sale with B&B Development (B&B), headed by Joe Blasco 
 and Dan Balcer, who intended to build an apartment complex on the property.  
 The contract provided that the Trust would convey the property to B&B in 
 exchange for five 3-bedroom units and four 2-bedroom units, which would be deeded 
 to the Trust upon fifty percent completion of construction.  The contract also 
 stipulated that B&B would obtain a surety bond in the amount of $765,000 
 (the value of the transaction) as consideration for the contract sometime on 
 or before . . . the infrastructure [was] started.  B&B never obtained the 
 surety bond or started building infrastructure.  Furthermore, though the deed 
 stated that the Trust conveyed the property for $107,765, the Trust never received 
 these funds.  
The documents were properly recorded in the Anderson County RMC Office on October 
 15, 1999 in the following order: the Trust, the contract, the deed to the trust, 
 and the deed to B&B.  
In January 2000, B&B obtained a mortgage on the property for $205,000 through 
 Carolina First to buy out Balcers interest in the company.  The closing attorney 
 in this real estate transaction, Michael Spivy, was the same attorney who had 
 handled the closing between the Trust and B&B only months before.  B&B 
 also obtained two wrap-around mortgages on the property, as well as other property 
 owned by B&B, from GrandSouth Bank in the amounts of $791,087.84 and $101,251.33.  

GrandSouth began foreclosure proceedings against the property in controversy, 
 citing B&B, Blasco Builders, and Carolina First as defendants.  Shortly 
 thereafter, the Trust intervened by consent order, requesting a declaratory 
 judgment as to its rights to the subject property.  Following consolidation 
 of the suits, B&B and Blasco Builders defaulted, and GrandSouth moved for 
 a voluntary dismissal, which was granted by the trial judge.  The trial judge 
 declared the deed from the Trust to B&B as null and void and set it aside 
 in its entirety.  The court also restored fee simple title to the property in 
 the Trust and declared the Carolina First mortgage as null and void, extinguishing 
 the lien relating thereto in full.  This appeal follows.  
STANDARD OF REVIEW
A suit for declaratory judgment is neither legal nor 
 equitable, but is determined by the nature of the underlying action.  An issue, 
 essentially one at law, will not be transformed into one in equity simply because 
 declaratory relief is sought.  Felts v. Richland County, 303 S.C. 354, 
 356, 400 S.E.2d 781, 782 (1991).  Here, the action was one to construe the real 
 estate contract and, therefore, at law.  In law actions, the trial court must 
 be affirmed when there is any evidence to support its findings.  Townes Assoc., 
 Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). 

However, the relief sought by the Trust for the breach of contract cause of 
 action is equitable, as are the other three causes of action.  See Brown 
 v. Greenwood School Dist. 50 Bd. of Trustees, 344 S.C. 522, 525, 544 S.E.2d 
 642, 643 (Ct. App. 2001) (holding that an action to rescind a contract is in 
 equity); Bullard v. Crawley, 294 S.C. 276, 278, 363 S.E.2d 897, 898 (1987) 
 (An action to set aside deeds is a matter in equity.); Bank of Williston 
 v. Alderman, et al., 106 S.C. 386, 391, 91 S.E. 296, 297 (1917) (stating 
 that constructive trusts are created when one party obtains money that does 
 not equitably belong to him).  On appeal of an equitable action, the appellate 
 court may find facts in accordance with its own view of the preponderance of 
 the evidence.  Townes Assoc., Ltd., 266 S.C. at 86, 221 S.E.2d at 775.  
 This broad scope of review does not require the appellate court to disregard 
 the findings of the trial judge nor does it relieve appellant of the burden 
 of convincing the court that the trial judge erred.  The trial judge, who saw 
 and heard the witnesses, is better able to evaluate their credibility.  Calcutt 
 v. Calcutt, 282 S.C. 565, 569, 320 S.E.2d 55, 57 (Ct. App. 1984).  However, 
 the appellate court is not bound by the trial judges legal determinations.  
 Swindler v. Swindler, 355 S.C. 245, 249, 584 S.E.2d 438, 440 (Ct. App. 
 2003).     
LAW/ANALYSIS
I. Notice
Carolina First claims that it did not have notice of the Trusts claim to the 
 property because the wording of the contract only provided the Trust a personal 
 remedy against B&B or on the surety bond in case of a default.  We disagree.
The contract provides
 
 The Seller agrees to convey to the Purchaser 30.79 acres . . . .  In consideration 
 of the conveyance of said 30.79 acres, the Purchaser agrees to secure a $765,000 
 Surety Bond to secure Sellers interest in the property which will be conveyed 
 to B&B Development, LLC.  Upon 50% completion of said project, B&B 
 Development, LLC, agrees to deed to Seller for $1.00 and other consideration, 
 5 (five) 3 bedroom units and 4 (four) 2 bedroom units.  Once said units are 
 deeded then the surety bond is terminated . . . .  The Surety Bond is to be 
 in place on or before the time that the infrastructure is started. 
 . . . .
 If Purchaser fails to complete its obligation under this said contract then 
 the Surety Bond would cover any loss to Seller.  The Purchaser would keep 
 ownership of said land . . .  

The contract required B&B to purchase a surety bond to protect 
 the interests of the Trust.  The contract was then properly recorded, putting 
 all subsequent creditors on notice of the Trusts equitable interest.  Ordinarily, 
 one who takes a security interest in real property with notice of an existing 
 third party equity in the property takes subject to the third partys interest. 
 . . . It is sufficient that one either knows or ought to know some third 
 party interest exists.  South Carolina Fed. Savings Bank v. San-A-Bel Corp., 
 307 S.C. 76, 79, 413 S.E.2d 852, 854 (Ct. App. 1992) (emphasis added).  See 
 S.C. Code Ann. § 30-7-10 (Supp. 2003).  The inclusion of the surety bond requirement 
 in the contract alone should have put anyone on notice. Carolina First used 
 the same attorney to close their mortgage as B&B and the Trust used to close 
 their real estate agreement.  Notice to an attorney is notice to the client.  
 See Faulkner v. Millar, 319 S.C. 216, 221, 460 S.E.2d 378, 381 
 (1995) (discussing principles of agency).  Spivey drafted the contract of sale 
 between the Trust and B&B and conducted the closing.  He was as familiar 
 with the provisions of that contract as the parties were.  Balcers testimony 
 unequivocally states that his understanding of the contract is that the property 
 would be returned back to Mr. Walker . . . if [B&B] did not complete these 
 units and purchase the surety bond to protect him.  Shortly thereafter, Spivey 
 represented to Carolina First that the property was unencumbered.  
Carolina First had notice or should have had notice of the Trusts 
 interest in the property.  Therefore, its mortgage is subordinate to the rights 
 and title in the Trust.
II. Rescission and Setting Aside the Deed
Carolina First claims the trial judge erred in rescinding and setting aside 
 the contract because this relief prejudiced the rights of an innocent third 
 party, Carolina First.  We disagree.
A valid contract consists of contractual intent, followed by an actual meeting 
 of the minds of the parties, accompanied by valid consideration.  Cobb v. 
 Gross, 291 S.C. 550, 553, 354 S.E.2d 573, 575 (Ct. App. 1987).  Furthermore, 
 consideration must be legally sufficient.    The general rule is that for a 
 breach of contract to warrant rescission, the breach must be so fundamental 
 and substantial as to defeat the purpose of the contract.  Gibbs v. G.K.H., 
 Inc., 311 S.C. 103, 105, 427 S.E.2d 701, 702 (Ct. App. 1993).  In addition, 
 to cancel a deed the moving party must show total failure of consideration or 
 grossly inadequate consideration.  Patterson v. Goldsmith, 292 S.C. 619, 
 628, 358 S.E.2d 163, 168 (Ct. App. 1987).  In this case, there was a substantial 
 breach of the contract because no consideration was ever paid.  B&B never 
 obtained the surety bond, nor built or conveyed the development units as required 
 by the contract.  
Most importantly, the acts of an attorney are directly attributable to and 
 binding on the client.  Greenville Income Partners v. Holman, 308 S.C. 
 105, 107, 417 S.E.2d 107, 108 (Ct. App. 1992).  No mistake attributable to an 
 attorney can be successfully used as a ground for relief, unless it would have 
 been excusable if attributable to the client.  Simon v. Flowers, 231 
 S.C. 545, 551, 99 S.E.2d 391, 394 (1957).  As discussed above, Spivey represented 
 Carolina First, just as he had represented B&B in the deed from the Trust.  
 He examined B&Bs title and he closed the loan.  Spivey knew of B&Bs 
 agreement with the Trust, that counsel did not represent Walker at the initial 
 closing, and that Walker was concerned about protecting his interest.  In addition, 
 he knew B&B was responsible for purchasing the surety bond and that it failed 
 to do so.  Yet, he recommended Blasco proceed with the loan and represented 
 to Carolina First that its mortgage would have priority.  Unfortunately, Carolina 
 First is bound by his mistake.  Greenville Income Partners, 308 S.C. 
 at 107-08, 417 S.E.2d at 108.  Therefore, the trial judge had sufficient evidence 
 before him to rescind the contract and set aside the deed. 
III. Constructive Trust
Carolina First claims the trial judge erred in finding a constructive trust 
 had been created because there was no evidence of fraud, bad faith, abuse of 
 confidence, or a violation of a fiduciary duty, which would give rise to an 
 obligation in equity to make restitution.  We disagree.
A constructive trust arises whenever one party has obtained money, which does 
 not equitably belong to him, and which he cannot in good conscience retain or 
 withhold from another, who is beneficially entitled to it.  Lollis v. Lollis, 
 291 S.C. 525, 529, 354 S.E.2d 559, 561 (1987) (citing Bank of Williston v. 
 Alderman, 106 S.C. 386, 391, 91 S.E.2d 296, 297 (1917)).  Constructive trusts 
 do not arise by agreement or from intention, but by operation of law with actual 
 or constructive fraud as their essential element.  Id.  Actual fraud 
 is not necessary, but such trust will arise whenever the circumstances under 
 which property was acquired make it inequitable that it should be retained by 
 him who holds legal title.  Bank of Williston, 106 S.C. at 391, 91 S.E.2d 
 at 298.  The trial judge in Doe v. Roe, 323 S.C. 445, 452, 475 S.E.2d 
 783, 786-87 (Ct. App. 1996), found that duress, abuse of confidence, commission 
 of a wrong, and any form of unconscionable conduct, artifice, concealment, 
 or questionable means can create a constructive trust as well (emphasis added).  

Furthermore, the trust arises and follows the property of its proceeds.  
 Bank of Williston, 106 S.C. at 391, 91 S.E.2d at 298.  B&B acted 
 unconscionably by not purchasing the surety bond, failing to convey the buildings 
 or pay their worth as consideration for the contract.  This conduct created 
 a trust, which follows the property in the lien to Carolina First.  Lastly, 
 the trial judge had sufficient evidence of unconscionable conduct on the part 
 of the attorney who represented both B&B and Carolina First.  In fact, before 
 the lien agreement with Carolina First, Blasco reminded Spivey that there was 
 no bond to protect Walker.  Blasco felt that Walker would be taken advantage 
 of by the contracts wording as interpreted by Carolina First because Blasco 
 didnt have . . . [in] mind at all that the Trusts interests would not be 
 protected if B&B never purchased the surety bond.  Spivey even admitted 
 that the purpose of the surety bond was to be in place at the time anyone else, 
 other than B&B and Walker Development Trust, had an interest in that property.  

IV. Equitable Lien
Carolina First claims 
 that the trial judge erred when he concluded that an equitable lien was created 
 because the parties did not intend the property to serve as security for the 
 payment of the debt.  
Because we decided a constructive trust was created by the unconscionable conduct 
 of B&B and Carolina First through its attorney, we need not address this 
 issue.  
AFFIRMED.
ANDERSON and SHORT JJ., and CURETON A.J., concur.

 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.